CHARLES A. WARREN *versus* JAMES R. S. WILLIAMS.

Where, in the trial of a writ of entry, the title of the tenant depends upon a conveyance to him alleged by the plaintiff to be fraudulent as to existing creditors, it appeared that the grantor of the tenant was one of the two members of a firm which conveyed, at about the same time he made the conveyance in controversy, all of their property, whether owned by the firm or by the partners separately, to different persons — but principally to the father of one, and the son of the other; — *Held*, that while it was not competent for the plaintiff to prove the subsequent *declarations* or the *general acts* of the grantor, he may the *subsequent disposition* of the property thus conveyed by the firm, for *their benefit*, or for the benefit of the alleged fraudulent grantor, or that they *subsequently received the earnings or proceeds thereof*.

The holder of a note given by a fraudulent grantor *before*, but not purchased until *after*, the conveyance, may impeach the conveyance.

Whether the special finding of a jury were regular or not, or whether against 'the evidence in the case or not; it will not be set aside, when it could not have affected the result, or injured the party moving to have it set aside.

Thus, where in the trial of a writ of entry, the title of the tenant depended upon a conveyance to him alleged to be fraudulent as to existing creditors, the jury, after their general verdict had been read, were orally asked by the presiding Judge, whether, in arriving at their verdict, they had decided whether or not the tenant paid any valuable consideration for the deed in controversy, to which the foreman replied, "the jury had found, that the tenant did not pay any consideration for the deed;" and the presiding Judge thereupon wrote out the question to which the above answer is responsive, and the verdict, together with said question and answer, was then read to the jury, and by them affirmed; — *Held*, that said special finding would not be set aside on motion of the defendant, the demand held by the plaintiff against the defendant being an existing one at the time of said conveyance.

ON EXCEPTIONS AND MOTION, from *Nisi Prius*, DAVIS, J., presiding.

WRIT OF ENTRY.

Plea, general issue, and joinder.

The verdict was for the plaintiff.

After said verdict had been read to the Court, the Judge orally asked the jury, whether, in arriving at their verdict, they had decided the question whether the tenant paid any valuable consideration for the deed of June 16, 1851, from

Royal Williams?—to which the foreman replied : That the jury had found that the tenant did not pay any consideration for the deed.

The presiding Justice then wrote the following question and answer : —

"Did the tenant pay any valuable consideration for the deed of the premises in controversy, given to him by Royal Williams, June 16, 1851 ?"

*Answer.* — " He did not."

The question and answer were not signed by the foreman or any of the jury.

The verdict, together with said question and answer, was then read by the clerk to the jury, and by them affirmed.

The remaining facts sufficiently appear in the opinion of the Court.

*Rand,* for the defendant.

The plaintiff claims title to the estate under a levy upon the same, as the property of Royal Williams. The tenant claims the same under a prior conveyance from Royal Williams ; and the question is not only upon the validity of the conveyance, but upon the plaintiff's right to impeach it.

Upon the first point. If the conveyance was made with the intent, on the part of both grantor and grantee, to defraud creditors of the grantor, it was void.

But there is no evidence of any such intent, and, if the jury based their verdict upon any such evidence of such intent, it is manifestly against the evidence and should be set aside.

Evidence of the subsequent disposition of other property conveyed about the same time, by Royal Williams, or by Williams & McLellan, to other persons, was improperly admitted by the Court. Such acts could not affect the tenant. He had nothing to do with them.

It is well settled, that even acts and declarations of the grantor subsequent to the conveyance, are not admissib e against the grantee. *Bridge* v. *Eggleston,* 14 Mass., 245 ;

*Foster* v. *Hall*, 12 Pick., 100 ; *Aldrich* v. *Earle*, 13 Gray, 578 ; *Taylor* v. *Robinson*, 2 Allen, 562.

Upon the second point. The plaintiff was not a creditor of Royal Williams, or of Williams & McLellan, at the time of the conveyance to the tenant, and consequently cannot impeach the conveyance upon the ground of fraud. He did not become a creditor, (as he testifies,) until more than three years afterwards. The instructions of the Court upon this point were erroneous. Conveyances made to defraud creditors, are void as to existing creditors only, not as to subsequent ones. And the instruction requested by the tenant should have been given.

The oral question put by the Judge to the jury, after they had returned their verdict, and orally answered by the foreman, and then reduced to writing by the Judge, although read to the jury and by them affirmed, is no part of their verdict, and should be rejected as surplusage. It was not signed by the jury ; it was not responsive to any question submitted to them when the case was committed to them. The whole proceeding was irregular, and, in considering that requested instruction, this question and answer should be disregarded.

*Fessenden & Butler*, for the plaintiff.

The opinion of the Court was drawn by

DAVIS, J. — Royal Williams and Eben McLellan were doing business as partners, under the name of Williams & McLellan, in 1851. In March, April, and May, of that year, they gave several promissory notes, payable in four months ; and in June they failed. Some of these notes were purchased by the plaintiff in 1854, and were put in suit in 1857.

June 16, 1851, about the time of the failure, Royal Williams conveyed the premises in controversy to his son, the present defendant. The plaintiff recovered judgment in his suit upon the notes, November 19, 1859, and caused his

execution to be levied thereon, claiming that the conveyance to the son was fraudulent and void as to the creditors of the father. And he has brought this writ of entry, to recover possession.

At the trial, there was evidence that, at about the same time, Williams & McLellan conveyed all their property, whether owned by the firm, or by the partners separately, to different persons — but principally to the father of one, and the son of the other. Some of the real estate so conveyed was afterwards sold for their benefit; and they subsequently received a part of the earnings of some vessels conveyed by them at the same time.

No *declarations* of Royal Williams, made *after* his conveyance to the defendant, would have been admissible. *Clark* v. *Waite*, 12 Mass., 439; *Aldrich* v. *Earle*, 13 Gray, 578. No such declarations were admitted in evidence. The ruling of the Court was, "that any evidence of the subsequent *disposition* of the property, conveyed by Royal Williams or Williams & McLellan about the same time of the conveyance in controversy, *for their benefit*, or for the benefit of Royal Williams, or that they subsequently *received the earnings or proceeds thereof*, would be admissible."

This ruling involves the question of the admissibility of evidence that the debtor conveyed *other property*, at about the same time; and of proof that such other conveyances were *fraudulent*, by showing that such property was subsequently disposed of or used for his benefit.

1. The proof of other fraudulent conveyances, made about the same time, has always been held admissible in this class of cases. *Flagg* v. *Willington*, 6 Maine, 386. "The proposition to be established by the attaching creditor who seeks to vacate a prior conveyance on the ground of fraud, is, (1,) that the *grantor made* his conveyance with the intent and for the purpose of defrauding his creditors; and, (2,) that the *grantee knew* of this intent, and participated in it. These propositions are in some measure independent of each other. And the evidence to prove them may be of different

kinds, and drawn from different sources." *Foster* v. *Hall*, 12 Pick., 89.

The other conveyances are proved as evidence of the intent of the *grantor.* It is not necessary, therefore, to show that the *grantee* had any knowledge of them. It is sufficient if he knew that the particular conveyance to *himself* was made with such intent. So it was expressly held in the case cited. Evidence of other conveyances is not admitted to show the intent of the *grantee;* and therefore *his* knowledge of them is immaterial. It is admitted to show the intent of the *grantor*, and is important for that purpose. If a debtor conveys *any* of his property to defraud his creditors, he must convey the whole of it not exempted from attachment, or his purpose would not be accomplished. One such conveyance, therefore, tends to show that any other conveyance, made about the same time, was made for the same purpose. *Howe* v. *Reed*, 10 Maine, 515; *Taylor* v. *Robinson*, 2 Allen, 562.

The knowledge and participation of the *grantee* in the fraudulent design of the conveyance to *himself*, is generally proved by other testimony. No question is raised upon this branch of the case. The exceptions find that other appropriate instructions were given.

2. When other conveyances are proved, how can *they* be shown to have been *fraudulent?* The *declarations*, or the *general acts* of the grantor, *subsequent* to the conveyance, are not admissible. His *admission*, though evidence against himself, if he were a party to the suit, is not evidence against his grantee. It is but the declaration of one, not under oath, nor in Court, who may be admitted as a witness.

But evidence of the subsequent *dealings of the grantor with the property conveyed*, stands upon a different basis. These are acts *in pais*, directly affecting the grantee or vendee. But subsequent possession and use by the vendor not only show *his* intention; they show the intention of the *vendee also*, whose assent is presumed. *Rollins* v. *Mooers*, 25 Maine, 192. This is but a negative way of proving that

the vendee did not, after the alleged sale, assert and exercise the rights of an actual, *bona fide* owner.   The continued exercise of such rights by the *vendor*, after the sale, unless explained, has always been held strong evidence of fraud, as against *both* of the parties.   *Allen* v. *Wheeler*, 4 Gray, 123 ; *Homes* v. *Crane*, 2 Pick., 607.

The evidence that some of the property sold by Williams & McLellan about the same time of the conveyance in controversy, was subsequently disposed of for their benefit, and that Williams afterwards received some of the earnings of the vessels then sold by them, was clearly admissible, in order to show that those sales were fraudulent.   For, if other *fraudulent* sales were made, about the same time, then, as we have seen, the sale to the defendant, if attended with the same badges of fraud, may be presumed to have been made for the same purpose.   The ruling on this point was correct.

The Court was requested to instruct the jury that, if the conveyance was made "for a valuable consideration, and the plaintiff, at the time of such conveyance, was not a creditor of Williams, then *he* cannot impeach the validity of the conveyance on the ground of a fraudulent intent by the grantor and grantee."   This was not given; but the jury were instructed "that the notes having been given before the conveyance, though not purchased by the plaintiff until afterwards, he was such a creditor as could impeach the conveyance on the ground of fraud."

By the statute 13 Eliz., c. 5, all conveyances made "to delay, hinder, or defraud creditors *and others* of their lawful *actions, suits, debts*, accounts, damages," &c., were made void, "as against such person or persons, his or their heirs, successors, executors, administrators, and *assigns*, whose actions, &c., by such fraudulent devices and practices are, shall, or might be in any way disturbed, hindered, delayed, or defrauded."

The design of this statute was to make such conveyances void as against all persons, or demands, liable to be affected

thereby. The right to hold them void was not merely *personal.* The creditor could not treat them as void, except *as to* his demands, or suits. Upon *payment*, or after a *transfer* of his claim, he, personally, could no longer impeach the conveyance on the ground of fraud.

But, as to the "demand," or any "suit" thereon, until paid or discharged, such a conveyance was "utterly void." The debt, whoever might become the owner of it, could be enforced against the *property*, the same as if it had not been conveyed. The conveyance was void as against the person intended to be defrauded, and his heirs, successors, executors, administrators, and *assigns*, if *their* actions, suits, debts, &c., were liable to be delayed or hindered thereby. That this embraces a suit brought by the subsequent purchaser of a preëxisting note, there can be no doubt.

The jury returned a special verdict, that the conveyance to the defendant was "without consideration." Upon this point there is a motion for a new trial, on the ground that the finding was irregular, and was against the evidence in the case. But the demand having been an existing one at the time of the conveyance, if it was *fraudulent*, it is immaterial whether it was voluntary, or for a valuable consideration. In either case it was void. The special finding, whether correct or not, could not have affected the result, or injured the defendant.

*The exceptions and motion are overruled.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and BARROWS, JJ., concurred.