128  373
140  433

# Robins, Fry & Co. *v.* Wooten.

*Bill in Equity to Set Aside Fraudulent Conveyance.*

1. *Fraudulent conveyance; how and when confirmed.*—A fraudulent conveyance is voidable merely, and is capable of confirmation by assent at the time or by subsequent ratification.
2. *Same; same; confirmation by creditor.*—Mere notice of a fraudulent conveyance without any action on the part of a creditor will not amount to a confirmation, but if with notice of the fraud, either actual or constructive, the creditor agrees upon consideration to confirm it, or makes any statement or agreement to that effect, upon the faith of which the grantee acts as if he would not otherwise, or if the creditor acts in such manner that the subsequent assertion of his rights, as creditor, if permitted, would be a fraud, he will be held to have assented to or ratified the transaction.
3. *Same; same; right of subsequent creditor to attack after confirmation.*—Where one has assented to or ratified a fraudulent conveyance he cannot successfully assail the same, upon becoming a creditor of the fraudulent grantor subsequent to such assent or ratification.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. H. SMITH.

The bill in this case was filed by appellees as creditors of Council B. Wooten, to set aside as fraudulent certain conveyances made by said Wooten to certain of the respondents, and also conveyances executed by the grantees of said Wooten to the other respondents. The facts necessary to an understanding of the opinion sufficiently appear therein. The cause was

submitted in the court below for final decree upon the pleadings and proof. Upon submission the chancellor entered a decree granting complainants relief. From this decree respondents appeal, and assign the same as error.

W. H. TAYLOE and WILLIAM CUNNINGHAME and GUNTER & GUNTER, for appellants.—"A conveyance made in fraud of creditors is valid as between the parties, and can only be avoided by creditors, or by the assignee in insolvency representing them; and if he affirm it" (and of course if they affirm it), "it stands good."—*Freeland v. Freeland*, 102 Mass. 477; *Butler v. Hildreth*, 5 Met. 49; *Snow v. Lang*, 2 Allen 18; *Harvey v. Varney*, 98 Mass. 118; *Morgan v. Abbott*, 20 N. E. 165; Wait on Fraud Con., § 92; *Warren v. Williams*, 52 Me. 349.

A creditor affirming or neglecting to disaffirm a fraudulent conveyance, it stands good.—*Freeland v. Freeland*, 102 Mass. 479; *Butler v. Hildreth*, 5 Met. 49; *Snow v. Lang*, 2 Allen 18; *Harvey v. Varner*, 98 Mass. 118; *Morgan v. Abbott*, 20 N.E. 165; *Warren v. Williams*, 52 Me. 349; Wait on Fraud. Con., §§ 91-2; and the numerous authorities cited in Bump on Fraud. Conveyances, 457 *et seq.* (2d ed.); *Butler v. O'Brien*, 5 Ala. 316.

"Each creditor has the right to elect for himself whether he will confirm the transfer or not, and cannot· be prejudiced by the acts of others."—Bump on Fraud. Con. (2d ed.), 459, citing *McAllister v. Marshall*, 6 Binn. 338; 6 Am. Dec. 458; *Litchfield v. Pelton*, 6 Barb. 187; *Geisse v. Beall*, 3 Wis. 367.

In this case it was utterly impossible that the original conveyance could have been made to defraud the subsequent creditors, for they had actual notice; and both they and Fannie G. Steele, on the existence of whose debt the present claim is founded, had affirmed the transaction. The following authorities hold that the subsequent creditor, with actual knowledge of the conveyance, cannot complain.—Wait on Fraud. Con., § 106; Bump on Fraud. Con., 320; *Kidd v. Mitchell*, 9

Am. Dec. 702; *Baker v. Gilman,* 52 Barb. 39; *Kane v. Roberts,* 40 Md. 594; *Shephard v. Thomas,* 24 Kan. 780; *Lehmberg v. Biberstein,* 51 Tex. 457; *Monroe v. Smith,* 79 Pa. St. 459; *Herring v. Richards,* 3 Fed. Rep. 443; *Sledge v. Obenchain,* 58 Miss. 670.

GREGORY L. & H. T. SMITH, *contra.*—It is as much fraud for a solvent, as for an insolvent, creditor to convert his property into money for the purpose of hindering, delaying and defrauding his creditors. *Beall & Coston v. Lehman, Durr & Co.,* 110 Ala. 450.

And where a conveyance is made either with the general intent to hinder, delay and defraud creditors, or with a special intent to defraud a particular creditor, it is void as to all creditors, *subsequent* as well as existing.—*Jordan v. Collins,* 107 Ala. 572; *Echols v. Peurrung Bros.,* 107 Ala. 664; *Echols v. Scroggins,* 106 Ala. 239; *Smith v. Hall,* 103 Ala. 235.

If the purpose of C. B. Wooten in making the conveyances was to hinder, delay and defraud Mrs. Steele in the collection of her debt, the conveyance was fraudulent and void as to subsequent creditors, unless Shade Wooten paid a valuable consideration for the property without notice of any fact that would have put a reasonable man upon inquiry, which, if diligently pursued, would have resulted in notice of such intent on the part of C. B. Wooten.—*Shaungut v. Udell & Crundell,* 93 Ala. 304; *Crawford v. Kirksey,* 55 Ala. 282; *Lehman v. Kelly,* 68 Ala. 192; *Hodges v. Coleman,* 76 Ala. 103; *Lipscomb v. McClellan,* 72 Ala. 151; *Shealy v. Edwards,* 75 Ala. 411; *Smith v. Heinman,* 118 Ala. 203.

When conveyances are made between near relatives under circumstances sufficient to raise a grave suspicion as to their *bona fides,* they will be presumed to have been fraudulent unless it be shown by the grantees that a valuable consideration was paid therefor.—*Hubbard v. Allen,* 59 Ala. 296; *Harrell v. Mitchell,* 61 Ala. 278; *Thames v. Rembert,* 63 Ala. 561; *Pickett v. Pipkin,* 64 Ala. 520; *Wooten v. Steele,* 109 Ala. 566;

*Thompson v. Tower Mfg. Co.,* 104 Ala. 143; *Harrell v. Mitchell,* 61 Ala. 270; *Hoyt Bros. Mfg. Co. v. Turner,* 84 Ala. 527.

TYSON, J.—The bill in this case seeks to have certain deeds declared fraudulent. The complainants' predecessor was a creditor of Council B. Wooten, the alleged fraudulent grantor. The only other creditor which Wooten is shown to have had at the time of the execution of his deeds was one Mrs. Steele. Her debt was evidenced by a promissory note upon which she had brought suit shortly before the deeds were made by Wooten. It may be conceded for the purposes of this case, that the debtor Wooten's deeds were fraudulent as against the complainants and Mrs. Steele, his only then existing creditors. After the execution of the several conveyances here assailed, Mrs. Steele reduced her debt to judgment and accepted in settlement of it a note and mortgage upon the lands, executed by W. A. Wooten, the alleged fraudulent grantee, a portion of which mortgage debt was paid by him, and the balance by draft drawn by C. B. Wooten in her favor upon the complainants. This draft was drawn, and paid by the complainants about two years after the execution of the alleged deeds, and constitutes practically the debt which complainants seek to enforce by their bill, the debt due them by C. B. Wooten when he executed the deed disposing of the lands having been paid by W. A. Wooten, the alleged fraudulent grantee.

It is not insisted by the complainants in this court that they acquired any of Mrs. Steele's rights which she may have had to have declared the conveyances fraudulent and void. Indeed if such insistence was made it could avail them nothing, for the reason that Mrs. Steele ratified the transaction. A short history of the transaction between W. A. Wooten and the complainants will suffice to show a confirmation by them of his title to the lands sought to be subjected by the bill. Complainants and their predecessors in business were for many years commission merchants in the

city of Mobile.  For twenty years Council B. Wooten, the alleged fraudulent grantor, had been doing business with them by borrowing money and obtaining supplies from them for the purpose of making crops upon his plantations, which indebtedness he paid by shipping his cotton crops to them, which were sold by them and applied to his indebtedness.  At the end of the year 1887, C. B. Wooten was indebted to the complainants in the sum of $11,389.47, a portion of which was secured by a mortgage upon the lands here sought to be condemned.  On the 17th day of February, 1888, one month and three days after the execution of the deeds by C. B. Wooten to Shade Wooten, and some two months prior to the execution of the deed by Shade Wooten to W. A. Wooten, the account of C. B. Wooten was closed, and the balance, $11,389.47, was paid by charging $6,011.34 to the account of W. A. Wooten, and the balance complainants took his and C. B. Wooten's note for, due November 17th, 1888, reciting in the note that "it is agreed that when this note is paid it shall be placed as a credit on a mortgage debt still due Robins, Burgess & Co. by C. B. Wooten." The complainants, instead of making advances to C. B. Wooten for the years 1888 and 1889 for the purpose of making crops upon these lands, made them to W. A. Wooten, he shipping them the crops raised by him for the puropse of paying the advances and the $6,000 which had been charged to him as a part of C. B.'s indebtedness to them; and in the spring of 1890 he paid to them the balance due for advances, etc., for the previous years, discharging his entire debt.  Also on May 17th, 1890, C. W. Hooper & Co. paid to the complainants the note which was to go as a credit upon the mortgage debt, and on December 11th, 1890, W. A. Wooten paid to Hooper & Co. this note and had the mortgage transferred to him.  The evidence discloses without conflict that complainants at the time they paid the draft of C. B. Wooten to Mrs. Steele in 1890, knew that W. A. Wooten claimed to own these lands, and also at the time that they received from Hooper & Co. the payment of his note; to say noth-

ing of the irresistible conclusion that they had knowledge that he was to become the owner of the lands at the time that he assumed C. B. Wooten's indebtedness to them in February, 1888, and had actual knowledge that he had so acquired title during the year 1888, after which they received the cotton crops raised upon them during the years 1888 and 1889, a part of which went to pay and discharge a portion of the $6,000 charged to him. It is true that Fry, the main witness for complainants, does testify that he never heard of the conveyance of C. B. Wooten to Shade Wooten, but he nowhere in his testimony expressly disclaims knowledge that W. A. Wooten claimed to own the lands. It is utterly immaterial whether he had any actual knowledge of the deed from C. B. to Shade if he knew that W. A., who is the grantee of Shade, was claiming to own the lands and he dealt with him recognizing the validity of his title. All of these deeds were on record, and it is incredible that credit to the extent of $16,000 would have been extended by the complainants to W. A. Wooten during the year 1888, and a credit of $15,000 during the year 1889, without some knowledge of his ability to pay, and some inquiry into the state of his title to the lands which he was occupying, and upon which he was making crops, the only resource to which the complainants could look for the payment of their debts. The conclusion is therefore irresistible, applying the rules which govern ordinary prudent men in the conduct of business affairs, that the complainants knew all along that W. A. Wooten claimed title to these lands; that they dealt with him as the owner, recognizing the validity of his title, and ought not in equity and good conscience to be allowed to retain the $11,000 which he paid to them, and at the same time assert the invalidity of his title.

A fraudulent conveyance is merely voidable, and consequently capable of confirmation either by assent at the time or by subsequent ratification. As said by Mr. Bump in his work on Fraudulent Conveyances, section 456: "Although a creditor is not a party to a fraudulent transfer, yet he may subsequently elect

to confirm it, for any one may dispense with a provision of the law which was made for his own protection. But before there can be any binding confirmation, he must have notice or knowledge of the facts which constitute the fraud. If he has, however, been guilty of negligence in availing himself of information within his reach, constructive notice may be imputed to him. Mere notice without any action on the part of the creditor or mere acquiescence by taking no present measures to interfere with the transfer, does not amount to a confirmation, for he can be precluded from assailing the transfer only on the ground of estoppel or agreement; there must be a benefit conferred upon him, or a disadvantage suffered by the grantee such as can bind the conscience of the former or clothe his act with the character of a contract. * * * But if with notice of the fraud either actual or constructive, he makes any agreement upon consideration confirming the transfer, or any statement or agreement to that effect, upon the faith of which the grantee acts as he would not otherwise do, or under such circumstances that his subsequent assertion or his rights as a creditor, if permitted, would operate as a fraud, he will be held to have confirmed the transfer. The confirmation need not be direct and express, but may be implied from the manner in which the parties deal with the property." See also *Oliver v. King*, 8 De Gex, M. & G. 110; *Phillips v. Wooster*, 36 N. Y. 412; *Beaupre v. Noyes*, 138 U. S. 401; *Freeland v. Freeland*, 102 Mass. 477; *Butler v. Hildreth*, 5 Metc. 49; *Snow v. Lang*, 2 Allen 18; *Harvey v. Varney*, 98 Mass. 118; *Morgan v. Abbott*, 20 N. E. 165; *Warren v. Williams*, 52 Me. 349; *Butler v. O'Brien*, 5 Ala. 316. In *Kahn v. Peter*, 104 Ala. 523, the creditor advised the making of the conveyance, and afterwards sought to have it declared fraudulent. He was held to be estopped upon the ground that he had assented to it. Confessedly a subsequent ratification or confirmation of a fraudulent conveyance with notice or knowledge of all the facts, is the equivalent of an assent or concurrence to its being made in the first instance. *Omnis*

[Hammett v. White.]

*ratihabitio retrotrahitur et mandato priori æquipartur.*
Having once confirmed or ratified the title of W. A.
Wooten to the land and accepted from him his as-
sumption of the debt of C. B. Wooten, which he after-
wards discharged, it is of no consequence that the
debt here sought to be enforced by the complainants
arose subsequently to such confirmation or ratification.
If this conveyance was good as against the complain-
ants as a prior creditor, it ought to be held good against
them as a subsequent creditor. This point was ex-
pressly ruled in the case of *Pell v. Treadwell*, 5 Wend.
661.

The decree of the chancery court is reversed, and a
decree will be here rendered dismissing the bill.

Reversed and rendered.