# McCurdy, *et al.* v. Kenon, *et al.*

### *Ejectment.*

(Decided May 30, 1912.　Rehearing denied June 29, 1912.
59 South. 489.)

1. *Fraudulent Conveyances; Valid as Between Parties.*—Where a father while indebted conveyed the land in controversy to his children, and such conveyance was delivered and possession taken thereunder, it was binding upon the parties thereto, and upon the personal representative and heirs of the grantor.

2. *Same.*—A voluntary conveyance of land by the debtor is voidable only as to the creditors and not void; the creditor being required to assert its invalidity through legal process against the property as the property of the debtor.

3. *Same; Right of Creditors Affirmance.*—The lands in controversy were purchased by D. from a trustee for W. who was without authority to make the sale; W. filed a bill to compel a surrender of the land, and pending the suit D. executed a voluntary conveyance of the land to four of his children with the remainder to their children.　Pending the proceeding, and in order to secure a conveyance D. was required to execute a bond to pay any judgment W. might recover in the case, the bond being executed by D., and all of the grantees in D.'s deed except one.　D. died pending the suit and it was revived against his heirs and personal representatives and judgment was recovered, and it remaining unpaid, execution was issued against the obligors in the bond, and their interest in the land sold to W.　Such proceedings evidenced an intent on W.'s part to affirm the conveyance, and not to disaffirm it as a fraud on creditors, and by purchasing at such sale, she acquired only the title of the heirs who were defendants in the execution, the same being a life estate.

4. *Descent and Distribution; Debts of Ancestor; Liability of Heir.*—The common law rule that a creditor by specialty might sue the debtor's heir for the debt does not obtain in Alabama.

(Sayre, J., dissents.)

APPEAL from Lowndes Circuit Court.

Heard before Hon. A. E. GAMBLE.

Ejectment by Sallie B. Kenon and others against W. D. McCurdy, and others. Judgment for plaintiffs and defendants appeal. Affirmed.

W. A. GUNTER and A. D. PITTS, for appellant. As Dudley's deed did not pass the title his subsequent death could not give validity to the inoperative deed, and so far as Witter is concerned the title remained in Dudley just as if the deed had not been executed, and when Dudley died the title descended to his heirs, and when she obtained judgment and on execution sold the property in question to satisfy the execution and purchased the same, it is plain that she actively interfered and asserted her right against the property of her debtor John Dudley.—Bump on Fraudulent Conveyances, p. 514. Dudley's deed to his heirs, and to their children was as to widow absolutely void.—Sec. 4393, Code 1907; *Stokes v. Jones,* 21 Ala. 738; *Elliott v. Horn,* 10 Ala. 532; *Brown v. Hunter,* 121 Ala. 212; *Forest v. Camp,* 16 Ala. 648; *Carter v. Castleberry,* 5 Ala. 277; *Hubbard v. Allen,* 59 Ala. 303; *Griffin v. Hall,* 129 Ala. 289; 4 Johnson 536; 14 Cyc. 311. As title did not pass it seems to be nonsense to say that the void and fraudulent deed derived new efficacy by the death of Dudley, and did pass title.—*Baker's Case,* 18 Ala. 433. The present parties plaintiff were not in existence pending this suit between Witter and Dudley, and hence, could not have been made parties if it had been desired or necessary, and the action taken may be regarded as a voluntary devotion by the fraudulent grantee and the heir to its proper purpose, and will not be disturbed here.—*Cottingham v. Greely B. Co.,* 129 Ala. 205; Bump on Fraudulent Conveyances, 452-454. Surely Witter had a right to treat the fraudulent deed as non-existent and to proceed to sell the land as if it

had never been made, and when so sold the fraudulent grantees cannot recover on the strength of such deed. —*Chandler v. Van Roeden*, 24 How. 224; Waite on Fraudulent Conveyances, sec. 59. The hue of the original sin incarnadines the whole of the stirps of the title, and the privies thereto were not bona fide purchasers without notice.—*May v. Laclare*, 11 Wall. 217; *Oliver v. Pratt*, 3 How. 333; *Shorter v. Frazer*, 64 Ala. 81. The creditor was in possession, and there was no need to file a bill attacking the fraudulent deed. She might have filed a bill to remove the cloud.—*Smith v. Cockerell*, 66 Ala. 64.

POWELL & HAMILTON, for appellee. The grantees under the deed from John Dudley took only a life estate, and McCurdy claims title through Mary Witter as the purchaser of the lands in controversy at an execution sale. In order for McCurdy, therefore, to defeat the rights of plaintiff it was necessary for him to show four things, a judgment, an execution thereon, a sheriff's deed to the land, and that the defendants or some one of them had such an interest in the land as would be subject to levy and sufficient to defeat plaintiffs title.—*Carrington v. Richardson*, 79 Ala. 104, *Doe ex dem. v. Webb*, 18 Ala. 812. At such a sale a bona fide purchaser acquires the right, title and interest of the judgment debtor therein whether legal or equitable and nothing more.—*Doe ex dem. v. Webb, supra; Foster v. Moody*, 51 Ala. 472; *Searcy v. Oates*, 68 Ala. 111; 17 Cyc. 1288. Where property is sold under execution, and the judgment debtor has only a life estate, or an estate for years, the fee does not pass, and the purchaser does not hold adversely to the revisioner or remainderman.—17 Cyc. 1290. A purchaser at an execution sale acquires no title where the judgment debt-

or had none, and is charged with all the equities and defects in the title existing at the time the lien of judgment attached.—*Grady v. Denson,* 129 Ala. 406; *Hendrix v. So. Ry.,* 130 Ala. 205. Judgment having been appealed, and affirmed became the judgment of the Supreme Court, and was no longer the judgment of the Chancery Court.—*Tillis v. Prestwood,* 107 Ala. 618. The deed from Dudley to his children was not only binding on Dudley himself but was also binding upon his personal representatives and heirs.—*Davis v. Swanson,* 54 Ala. 277; *Coffee v. Norwood,* 81 Ala. 515; *Gilliland v. Fenn,* 90 Ala. 233; *Glover v. Walker,* 107 Ala. 540; *Kirby v. Raines,* 138 Ala. 194. Although the deed be void against Mrs. Witter, if she by any act or course of conduct affirmed it, or if she and those claiming under her neglected to disaffirm it, it became a valid deed as to every one.—*Butler v. O'Brien,* 5 Ala. 316; *Robbins, et al. v. Wooten,* 128 Ala. 377; 102 Mass. 479; 20 N. E. 165; 52 Me. 349; 2 Allen 18. The deed is not void as to subsequent creditors unless made with intent to defraud them.—*Elyton L. Co. v. Iron Co.,* 109 Ala. 602; *Furn. Co. v. Simmons,* 111 Ala. 438. The course pursued by Mrs. Witter had the effect to confirm the conveyance, and the title acquired at the purchase was the title only of the heirs of the defendants in execution.—*Robbins v. Woote, supra.*

McCLELLAN, J.—Statutory ejectment by appellees against appellants.

It was agreed that John Dudley, Sr., was the common source of asserted titles. The plaintiffs are children of Joseph R. Dudley. In 1866 John Dudley, Sr., executed a deed to the lands in controversy to Joseph R. Dudley, Bolling Dudley, Sarah Reese, and Julia Dudley (later the wife of W. C. Kirkland). They were

children of John Dudley, Sr. The intent of the grantor, in this instrument, was to vest in each of these grantees a life estate in the lands described, with remainder to their children. Joseph R. Dudley died in 1909. The recovery given the plaintiffs in the court below was of an undivided one-fourth interest in the lands described in the complaint.

The defendants' asserted claim is back, through mesne conveyances, to a sale of these lands under an execution, issued in the early '70's, in the original equity cause of Mary D. Witter against John Dudley, Sr. Pending the final disposition of this cause, John Dudley, Sr., died in 1871. The revivor was against his personal representative and his heirs, a part only of whom were the grantees in the mentioned deed of 1866.

The history, in the main, of Mary D. Witter's (nee Lewis) connection with and relation to these lands, as, also, the course, nature, and result of the litigation may be found set forth in *Witter v. Dudley,* 36 Ala. 135; *Witter v. Dudley,* 42 Ala. 616; *Dudley v. Witter,* 46 Ala. 664; and *Dudley v. Witter,* 51 Ala. 456. We shall avoid repetition as far as may be consistent with a statement of the circumstances out of which the legal question now to be considered arises.

In 1860 Mary D. Witter filed her bill against John Dudley, Sr., to compel his surrender of the lands which, in equity, belonged to her as an heir at law of Francis Lewis, her father. The legal title to these lands had been vested in Hamlin F. Lewis, *as trustee,* for his sister, Mrs. Witter. Without authority of any kind, the *trustee* undertook to sell these lands to John Dudley, Sr. The theory of the bill also comprehended an accounting by Dudley to Mrs. Witter for rents and profits. While, as stated, this cause was pending, John Dudley, Sr., on October 27, 1866, executed a deed of gift to his

four children, with remainder to their children. The liability of Dudley, Sr., to Mrs. Witter existed when this deed of gift was executed.

Pending this cause, this proceeding took place: "At the October term, 1868, the following order was entered in the cause: 'The complainant having announced herself ready for trial, the defendant Dudley applied for a continuance, and for leave to examine the complainant and Mrs. Susan Lewis, the widow of D. H. Lewis, and Mrs. Mary M. Scott, the wife of James E. Scott, as witnesses for said Dudley in said cause, on the point that complainant had ratified the sale of the lands in controversy by H. F. Lewis to said Dudley, or had received the purchase money from said Lewis. This application is granted by the court, on the following conditions: (1) That said Dudley, within 10 days from the adjournment of the present term of the court, shall file with the register of this court a bond in the penal sum of $30,000, payable to complainant, executed by said Dudley, to be approved by the register of this court, conditioned to pay and satisfy any decree rendered or recovery had by the complainant or her personal representatives in this cause; and said bond must contain on its face an express provision that this court may render its decree in this cause against any or all the obligors therein for the amount or amounts for which a decree may be rendered against said Dudley or his personal representatives, and award execution against any or all of the securities on said bond, as soon as an execution is returned, "No property," or unsatisfied, against said Dudley or his personal representatives. (2) That the said John Dudley shall, within said 10 days, pay to the register $50 of the costs in this cause. (3) That if said John Dudley shall fail to execute and file such bond with the register within

said 10 days, or shall fail to pay said $50 of the costs within said 10 days, then the aforesaid continuance of this cause, the aforesaid grant of said application of said Dudley to examine said witnesses, is revoked and annulled, and this cause is then forthwith to be submitted to the chancellor, with all the pleadings and proofs, and the agreements used and produced in the cause on the former trial at the last term; and the said chancellor shall, in vacation, proceed to make all orders and decrees in this cause which he could lawfully make in term time and all such orders and decrees shall have the like effect as if made in term time, including references, confirmation of register's reports, appointment of trustees, award of writ of possession, etc. (4) If said costs are paid and said bond executed and filed within said 10 days, then the examination of said witnesses may be had, but must be obtained upon the usual interrogatories and notice, and subject to all legal objections and exceptions by or on behalf of complainant; and said Dudley is to come to trial at the next term of this court, and to make no further application for continuance or delay. And the said Dudley accepts the said terms and conditions hereinabove set forth.' " *Dudley v. Witter*, 51 Ala. 457, 458.

All the conditions of this order of continuance were met. The bond specified was made by John Dudley, Sr. The co-obligors thereon were W. C. Kirkland, Joseph R. Dudley, Bolling H. Dudley, and Mrs. Sarah H. Reese. The condition of that obligation made payable to Mary D. Witter, as the order of the court required, was as follows: "The condition of the above obligation is such that, whereas the said John Dudley, who is known as John Dudley, Sr., is a defendant to a suit pending in the chancery court of said county of Lowndes, in favor of the said Mary D. Witter, by her next friend, against

the said John Dudley and others; and whereas, at the October term, 1868, of the said chancery court the said John Dudley applied to said court for a continuance of said suit, and also for leave to examine certain witnesses, named in the minutes of said court at said term, which application was granted by said court on certain terms and conditions, shown in the entry on the minutes of said court at said term, which entry is here referred to as a part hereof; and whereas the execution of such a bond as this is part and parcel of said terms and conditions: Now, if the said John Dudley, Sr., shall pay and satisfy any decree rendered or recovery had in said suit by the complainant or her personal representatives, then this obligation shall become inoperative and of no effect; otherwise to be and remain in full force and effect. And we hereby consent and agree that the said chancery court may render its decree in said suit against any or all of us, for the amount or amounts for which a decree may be rendered against the said John Dudley or his personal representative, and award execution against any or all of us who are his securities on this bond as soon as an execution is returned, 'No property,' or unsatisfied, against the said John Dudley or his personal representative."—*Dudley v. Witter*, 51 Ala. 458, 459.

The revivor stated having been effected after John Dudley's death, "at the October term, 1872, the register having reported the amount due for rents and profits, as agreed on between the parties, at $10,000, his report was confirmed, and the cause was submitted for final decree on pleadings and proof." The following decree was rendered: "It is therefore ordered, adjudged, and decreed by the court that the complainant recover of the said Milton R. Dudley, as the administrator of the estate of the said John Dudley, deceased,

and of the obligors on said bond—this is to say, W. C. Kirkland, S. H. Reese, J. R. Dudley, and B. H. Dudley —the said sum of $10,000, reported to be due to the complainant, for the rents and profits of the said lands, by the said report of the register, with interest on said sum from the 30th day of September, 1872, and the costs of this suit, to be taxed by the register. It is further ordered, adjudged, and decreed that the register of this court issue the writ of fieri facias against the said Milton R. Dudley, as the administrator of said John Dudley, deceased, commanding the officer into whose hands said writ may be placed to make the said sum of $10,000, with interest and costs of suit, of the goods and chattels of the said John Dudley, deceased, unadministered in the hands of his said administrator; and that, if said writ is returned unsatisfied, the register must thereupon, forthwith, issue the writ of fieri facias against all of the obigors on said bond for the said sum of $10,000, with interest and costs of suit, indorsing, however, on said fieri facias any payments or collections made on the writ against the said administrator. It is further ordered, adjudged, and decreed that neither said fieri facias, nor any return thereon, shall preclude said administrator as such, or his official sureties as such, in any other cause, except the present, from claiming and enjoying the same benefit from the insolvency of the estate of the said John Dudley that they could have claimed and enjoyed if no such execution against said administrator, or return thereof, had ever existed, nor from claiming and enjoying the full benefit of such insolvency in this cause, to every extent and purpose, save only as to the issue and return of said execution as the means for enforcing fully the liability of the obligors on said bond, executed on the 17th October, 1868."—*Dudley v. Witter*, 51 Ala. 459, 460.

The decree was affirmed in all respects upon appeals to this court.—*Dudley v. Witter,* 51 Ala. 456.

The condition to the right, under the bond, to com pel the obligors (other than John Dudley, Sr.) to satisfy the engagement they had assumed by the bond was met.—*Dudley v. Witter,* 51 Ala. 456. 465.

The sheriff's deed, of October 27, 1874, omitting formal parts, is as follows: "Whereas, an execution issued from the chancery court of Lowndes county, in favor of Mary D. Witter, and against S. H. Reese, W. C. Kirkland, P. R. Dudley, B. H. Dudley, M. B. Bowie, M. E. Moore, J. S. Moore, Julia Moore, J. H. Underwood, Etherbert Harrell, was levied by me, L. J. Bryan, as sheriff of said county of Lowndes, on the following property of said defendants. viz., the south half of section twenty-nine, the east half of the northwest quarter of section twenty-nine, south half of the south half of the northwest quarter of section twenty-eight, the southwest quarter of section twenty-eight, west half of the northwest quarter of section thirty-three, the east half of the southeast quarter of section thirty-one, all of section thirty-two, except one hundred and fifty-seven acres, east half of the northwest quarter of section thirty-three, all in township fifteen, range fourteen, and known as 'Dudley's Swamp Place'; and whereas, said property, having been first duly advertised for sale, was sold by me as sheriff, aforesaid, on the 5th day of October, 1874, before the courthouse door of said county, to Mary D. Witter, who became the highest and last bidder for the same, at the price of eight thousand one hundred thirty-eight and 68/100 dollars: Now, therefore, be it known that in the consideration of the premises, and of the payment of the said sum of money above mentioned, I do hereby sell and convey unto the said Mary D. Witter all the legal right, title, interest

and claim which the said defendants, or any of them, had and held in the property described above. In testimony whereof, I hereunto set my hand and affix my seal this the 5th day of October, 1874."—Transcript, pp. 183, 184.

The names, recited in the deed, of Bowie, M. E. Moore, J. L. Moore, Julia Moore, Underwood, and Harrell were the persons who joined in the execution of the supersedeas bond on the appeal of Joseph R. Dudley, Bolling Dudley, S. H. Reese, and W. C. Kirkland to this court. They were the defendants, as appears from the record and from the supersedeas bond.

After the elapsing of more than 30 years, it must be affirmed, under the pertinent doctrine of *Baucum v. George,* 65 Ala. 259, 266, that an execution validly issued and regularly came into the hands of the sheriff, consistent with the recitals of the deed just quoted.

The nature and effect of the bond, which was one of the conditions to the continuance in 1868, was considered on the appeals reported in 46 and 51 Alabama. It was then held that the undertaking was a conditional assurance for the payment of the money decree that the complainant anticipated would be rendered against John Dudley, Sr. The instrument was regarded as a security, available upon contingencies particularly defined. The arrangement it made intended to protect the complainant against the insolvency of John Dudley, Sr., which, in fact, later intervened. According with the letter and spirit of the instrument, a conditional money decree was rendered against the co-obligors of Dudley, Sr.; and this decree was the basis for the sheriff's sale, to which the defendants must and do ascribe their claim to the land. That the obligation supporting the decree thereupon was for the sole benefit and protection of Mrs. Witter's interest and rights, and

that she accepted the provisions thus made for her protection, cannot be the subject of doubt.

The records of the chancery court of Lowndes, and those of this court, in the very litigation in which given, demonstrate the complete acceptance of the bond's terms and conditions and provisions by Mrs. Witter.—*Dudley v. Witter*, 46 Ala. 664; *Dudley v. Witter*, 51 Ala. 456.

Mrs. Witter was, as readily appears, a creditor of John Dudley, Sr., at the time he made the voluntary conveyance of October 27, 1866. That conveyance, being consummated and possession taken thereunder, was binding upon the parties thereto, and upon the personal representatives and heirs of the grantor.—*Davis v. Swanson*, 54 Ala. 277, 25 Am. Rep. 678, *Glover v. Walker*, 107 Ala. 540, 18 South. 251, *Coffey v. Norwood*, 81 Ala. 512, 8 South. 199, and *Gilliland v. Fenn*, 90 Ala. 230, 8 South. 15, 9 L. R. A. 413, among others.

As to Mrs. Witter, the then existing creditor of the grantor, the conveyance was *voidable*, not *void.*—*Robins, et al. v. Wooten*, 128 Ala. 373, 378, 30 South. 681; Bump on Fraud. Conv. §§ 450, 451. The creditor's election to treat such a conveyance as void—as if it had not been made—with the view to the subjection of the property thereby fraudulently sought to be conveyed, must be asserted through the processes the laws afford, and must be against the property so conveyed as *the property of the debtor.*—Bump, §§ 450, 451.

The status fixed by the bond made by Joseph Dudley and others, and by the decree rendered by the chancery court in consonance with the terms and provisions of the bond, was to establish for the creditor two sources for the satisfaction of her demand against the original debtor, viz., against the estate of the original debtor, and that failing (as it did), then against the

obligors of the bond, which, as stated, passed into the
form and substance of a decree against them.  It was
such a judicial pronouncement as expressly contem-
plated and supported an execution to enforce it—a pro-
nouncement obviously distinct from and secondary,
upon the defined contingency, to the judicial pro-
nouncement which supported the execution against the
estate of the original debtor.  The sheriff's deed, con-
sistent with its recital of the process which invited the
sale through which the defendants can and do *alone*
trace their title or rights to the land in controversy,
purports to transmit to the purchaser only such title
and interest as the defendants in execution had in the
lands described therein.

The purchaser, at a sale under execution acquires
only the title or interest which the defendant in execu-
tion had at the time of levy and sale, and nothing more.
—*Foster v. Moody,* 51 Ala. 473; 17 Cyc. 1288.  There
was, as appears, no conveyance of the interest or title
of the original debtor, but solely of the interest or title
of those mentioned in the sheriff's deed, against whom,
by *their* contractual engagement, a distinct judgment
was rendered, and against whose properties an execu-
tion to enforce that judgment was issued, levied, and
a sale had.

What interest did the mentioned children of the
original debtor, then deceased, have in the property now
in question?  Was the sale of their interest or title as
heirs, or was the sale of their interest or title derived
from the conveyance of October 27, 1866?

Nothing appears in the facts and circumstances at-
tending this proceeding in the chancery court of Lown-
des from which it could be concluded that the creditor
treated, or intended to treat, the conveyance of 1866
as if it had never been made.  There is nothing which

tends even to show that the creditor, in employing the unfruitful process againt the estate of the original debtor, or the fruitful process against the obligors on the bond, contemplated the repudiation of the deed of 1866, as the creditor might have done. The levy was upon the property *as that of the bondsmen*—as that of those who engaged to suffer judgment as a security and to pay the sum, if process was unfruitful against the property of the original debtor. This action consisted, in all respects, with an unexercised, unavailed of, unintended, election to avoid the fraudulent (as to the creditor) conveyance of 1866. Indeed, to sell under that execution, under the circumstances shown, the interest and title of the bondsmen in the subject of the fraudulent (as to the creditor) conveyance to them (in part), and accept the proceeds of that sale in discharge pro tanto of their *contractually* assumed liability for the debt of the original debtor, was manifestly to confirm their investment with such title or interest as the merely *voidable* deed conveyed. That action was, as readily appears, entirely inconsistent with any notion of repudiation of the fraudulent (as to the creditor) conveyance, or of treating it as nonexistent; for, if the deed had been so treated, the legal process to subject it must have run, not against the title of the heir, *as such,* to the property, and in sequence a sale of the heir's title to satisfy the creditor's demand against the original debtor, but against the property as that of the original debtor. That the sale, perfected by the sheriff's deed, did not contemplate the subjection of the title or interest of the heirs, *as such,* to the satisfaction of the judgment is rendered certain by the fact that the conveyance, according with the execution it recites, only purported to convey the interest or title of a *part only*

of the heirs (defendants in the execution) of the original debtor.

The common-law rule that enabled the creditor by specialty to sue the heir for the debt of the ancestor did not and does not prevail in this state.—*Scott v. Ware,* 64 Ala. 174. It is, of course, a well-accepted doctrine that a creditor may ratify or confirm a voidable (by the creditor) fraudulent conveyance by his debtor, and thereby make the conveyance good; it being good and binding upon the grantor, his heirs and personal representatives.—*Butler v. O'Brien,* 5 Ala 316, 322; *Robins, et al. v. Wooten,* 128 Ala. 373, 30 South. 681; Bump. §§ 455, 456, 459, 460.

The execution sale, therefore, operated, through the sheriff's deed, to invest the purchaser thereat with the life estates of those who took that interest or estate in the land in suit under the conveyance of October 27, 1866. The interest or title of the remaindermen was not affected thereby. The appellants, as successors in right and title of the purchaser, did not acquire the right and title which the plaintiffs, as remaindermen, now assert.

Our conclusion accords with that prevailing and which was given effect on the trial. The judgment is therefore affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON ANDERSON, MAYFIELD, and SOMERVILLE, JJ., concur. SAYRE, J., dissents.