[McCurdy v. Kenan, et al.]

# McCurdy *v.* Kenan, *et al.*

### *Bill for Sale of Land for Division.*

(Decided December 18, 1913.   Rehearing denied February 5, 1914.
64 South. 578.)

1. *Election of Remedies; Acts Constituting; Conveyance.*—The status considered and it is held that the creditor by having execution issued against the obligors on the bond of the debtor, and purchasing the land at the sale, elected not to avoid the conveyance by the debtor, and hence acquired only the life interest of Joseph R. Dudley, since she could not claim both under such conveyance and against the same.

2. *Fraudulent Conveyance; Right to Attack; Affirmance of.*—Where a conveyance is void as to a creditor, such creditor may obtain a judgment against the debtor, and treating the conveyance as null and void, have the property sold under the execution as the property of the debtor, or the creditor may file a bill and have the property subjected to the payment of the debt, but he must do something manifesting an election on his part to treat the conveyance as void.

APPEAL from Lowndes Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Sallie B. Kenan and others against W. D. McCurdy and others for the sale of land for division. Decree for complainants, and respondent McCudy appeals. Affirmed.

The facts made by the bill are briefly:  That complainant and S. Watt Dudley, J. R. Dudley, and Julia D. Small are the heirs of Joseph Dudley, and that Joseph R. Dudley was the son of John Dudley, Sr. That on October 27, 1866, John Dudley, Sr., was seised and possessed of the following described real estate, situated in Lowndes county (1,323 acres described by government subdivision), and on October 27, 1866, executed and delivered a deed conveying the above-described land together with other lands to his children, Mrs. Sarah H. Reese, Joseph R. Dudley, Bolling Dudley, and Julia A. Dudley, which deed was duly filed for

record, etc., and that, under and by virtue of said deed, each of the above-named grantees acquired an undivided one-fourth life interest in said land, and upon their death the property therein conveyed was to rest in the children or descendants of the respective grantees; that is to say, the land acquired by Joseph R. Dudley by said deed upon his death was to vest in his children, or their descendants, and so with the other three of said grantees. That Joseph R. Dudley is dead, and that complainant and Milton R. Dudley and Rosa Dale Dudley, minor children of said Joseph Dudley, are his only children and heirs. The bill then alleges the bringing by complainants against W. D. McCurdy an ejectment suit, and the result thereof as set forth in the opinion of the Supreme Court in *McCurdy v. Kenon,* 59 South. 489. The bill then alleges that McCurdy has acquired the interest of Bolling Dudley and Julia Dudley, and thus owned a one-half interest in the land above described, and has also acquired the life estate of Sarah H. Reese, and then proceeds to set out the interest of others in the land, together with certain incumbrances by reason of judgments against some of the heirs, with the allegation that the lands cannot be equitably divided or partitioned, and praying for a sale for division. McCurdy, by his answer, set up the fact that Mary Witter was a creditor of Dudley, Sr., that the deed under which complainants claimed was voluntary, and was made with the purpose and intent of hindering, delaying, and defrauding said Mary Witter, also setting up a levy of execution on the 17th day of August, 1874, against Sarah Reese, Joseph R. Dudley, father of complainant, B. H. Dudley, and others, and a sale by the sheriff of this land to said Witter, who paid a valuable consideration therefor, and his acquisition of the land from said Witter. The other facts sufficiently appear in the opinion.

W. A. GUNTER, and A. D. PITTS, for appellant. The
questions involved in this appeal were presented and
decided on the appeal in the ejectment suit between the
same parties.—*McCurdy v. Kenan,* 59 South. 489. A
fraudulent conveyance is no conveyance against the
person intended to be defrauded.—*Stokes v. Jones,* 21
Ala. 738; *Brown v. Hunter,* 121 Ala. 212; *Griffin v.
Hall,* 129 Ala. 289; 4 Johns 536; 3 B. & A. 372. In pur-
suing the remedies of the law, the creditor may treat
the property as though the transfer had not been made.
—Bump on Fraudulent Conveyances, 450. The valid-
ity of deeds may be collaterally tried by levying an ex-
ecution and selling.—*Hazard v. Franklin,* 2 Ala.
349. While the title remains in the fraudulent gran-
tee, the processes of the law may be enforced against the
land with the same effect as if no conveyance had been
made.—Waite on Fraudulent Conveyances, 59; 134 N.
Y. 568; 24 How. 224. In this instance Joseph R. Dud-
ley took by inheritance an interest in the fee on which
the execution could and did operate, and the courts
have no right to impute to the creditor a purpose or de-
sign to sell the title derived under the fraudulent deed
rather than the fee.—*Elliott v. Horn,* 10 Ala. 348; *Gilli-
land v. Fenn,* 90 Ala. 234. There was no estoppel to
say that Dudley held by descent.—94 U. S. 606.

POWELL & HAMILTON, for appellee. The questions here
presented are decided adversely to appellant's conten-
tion in the case of *McCurdy v. Kenan,* 178 Ala. 344, and
authorities therein cited.

DE GRAFFENRIED, J.—This opinion, be it under-
stood, must be read in connection with the opinion
which was rendered by this court in the case of *W. D.
McCurdy v. Sallie B. Kenan,* 178 Ala. 344, 59 South.
489.

So far as the questions involved in this case are concerned, we desire to say that it is admitted by all parties that the deed which was executed and delivered by John Dudley, Sr., to four of his children, viz., Joseph R. Dudley, Bolling Dudley, Sarah Reese, and Julia Dudley, was *valid* as to the world, except as to Mary D. Witter. It was binding on the other children of John Dudley, Sr., and, when John Dudley, Sr., died, his other children, as *heirs,* took *no* interest by *inheritance* in said lands. It was *void* as to Mary D. Witter, because she was a creditor of John Dudley, Sr.; but, in so far as the questions that we have to consider are concerned, it was *valid* as to every other person.

2. The above conveyance, good as to all the world, except as to Mary D. Witter, but void as to her, vested in said Joseph R. Dudley a life estate in an undivided one-fourth interest in the lands involved in this litigation, and only a life estate. The remainder in fee simple in said undivided one-fourth interest in said lands, under said conveyance, good as to all the world, *except* as to Mary D. Witter, but *void* as to her, vested in the children of Joseph R. Dudley.

3. When a conveyance is *void* as to a creditor, the creditor must do *something* manifesting an *election* on his part to *treat* the conveyance as *void.* He may, if he sees proper, obtain a judgment against the debtor, and, treating the conveyance as null and void, have the property described in the conveyance sold, under execution issued upon the judgment, as the *property of such debtor.* He may, also, if he sees proper to do so, file a bill in equity, and have the property subjected to the payment of his debt. The thing which he must, in all cases, no matter to what forum he addresses himself, do, is to manifest an election on his part to treat the property as the *property* of the *debtor.* He must *seek the title of*

*the debtor* to the property, and, in doing so, can, of
course, by such proceeding, obtain no *better rights, no
greater interest in,* and *no higher title to* the property
than the debtor himself had in the property when he
made the conveyance. A judgment creditor cannot, by
virtue of his debt *merely,* take possession of his debtor's
property. He must get possession in the manner pro-
vided by law, and, to acquire title thereto, he must ac-
quire it in the manner which the law has provided. We
take it that these statements need no citation of au-
thority to sustain them.

4. It is also a familiar proposition that a party can-
not claim both *under* and *against* the same conveyance.
He cannot, in one breath, say that a conveyance is valid,
and, in the next breath, say that it is invalid. A credi-
tor who has the right to avoid a sale of a particular
piece of property, made by his debtor cannot acquire
rights to that property both *under* and *against* the con-
veyance which he has a right to avoid. If he elects to
treat the sale as valid, and to acquire, *under* the convey-
ance, the rights which the *grantee* acquired to the prop-
erty by virtue of the conveyance, then he cannot, at the
same time, say that the grantee acquired *no* rights
under the conveyance. If he sees proper to disaffirm
the conveyance, then, as to him, the conveyance is as if
it had never existed—no rights of third parties inter-
vening—and in that event he acquires the title which
the grantor had in the property at the time the convey-
ance was made. In such a case the title to the prop-
erty is, in so far as the creditor is concerned, just as if
the conveyance had never been made. If, on the other
hand, he sees proper not to disaffirm the conveyance,
and actually acquires rights under, and in recognition
of, the conveyance, then, in such event, the conveyance,
as between the creditor and the fraudulent vendee, oc-

cupies the same position as if the conveyance was in no way tainted with fraud.—Bump on Fraud. Con. (3d Ed.) 460, 461; *Robins, Frye & Co. v. Wooten,* 128 Ala. 376, 30 South. 681.

5. In the instant case Mary D. Witter had the right, if she had seen proper so to do, to declare that the conveyance to which we have above referred was void, and by appropriate proceedings, amply provided by the law, to subject the lands described in the conveyance to the payment of her debt.  In that event the property would have been treated by the court as the property of John Dudley, Sr., or, he being dead, as the property of his estate; and in that event, the conveyance being held to be void, the legal title to the land would have been treated, in so far as Mary D. Witter was concerned, as having descended to the heirs—not *four* of them, but *all* of them—of John Dudley, Sr.  *Treating the convey- ance as void,* Joseph R. Dudley did not inherit from his father an undivided one-fourth interest in said lands.  John Dudley, Sr., had more than four heirs, and when he died, treating the conveyance as void, the title to the land descended to the heirs.  When, however, Mary D. Witter sold the land as the property of Joseph R. Dudley, she claimed to have bought—and W. D. Mc- Curdy through her *now* claims—not that interest which descended to Joseph R. Dudley as *heir,* treating the con- veyance as *void,* but an undivided one-fourth interest, that interest which Joseph R. Dudley took for life in the lands under the said conveyance.  If we were to concede that Mary D. Witter, after the death of John Dudley, Sr., was in a position to sell the title which descended, treating the conveyance as void, to the heirs of John Dudley, Sr., under execution, for the payment of her debt, then in that event, as Joseph R. Dudley owned less than one-fourth of that title, she could not

have laid claim, *through him,* as a purchaser at said sale, of a greater interest in the land than descended to him as such heir.

"Courts of equity, in affording relief against fraud, seek simply to restore the parties, as near as may be, to the positions they would have occupied had no fraud been perpetrated."—*Kennedy v. First Nat. Bank of Tuscaloosa,* 107 Ala. 170, 18 South. 396, 36 .L. R. A. 308.

In this case, if no fraud had been perpetrated, *less* than an undivided one-fourth interest in the land would have descended to Joseph R. Dudley upon the death of his father. The execution ran against *Joseph R. Dudley,* and *his* interest in the land was sold under that execution. Joseph R. Dudley, as grantee under the deed which Mary D. Witter had the power, at her election, to avoid, had an undivided one-fourth interest for life in said lands. Mary D. Witter took possession of that undivided one-fourth interest, and in so doing, we think, clearly indicated an election on her part *not to avoid* the sale.

6. It was pointed out in the opinion rendered on the former appeal in this case (178 Ala. 344, 59 Southern Reporter, 489, supra) that the common-law rule that enabled the creditor by specialty to sue the heir for the debt of the ancestor does not prevail in this state. When Mary D. Witter, through her execution, sold Joseph R. Dudley's interest in the land, she sold it because *Joseph R. Dudley* owed the money for the collection of which the execution was issued. While that debt was also the debt of the ancestor, the land was sold, *not* as the property of the *ancestor,* but as the property of Joseph R. Dudley, and all that the purchaser at that sale could possibly have acquired was Joseph R. Dudley's interest

in the land. The law of the state gave Mary D. Witter no remedy whereby she could reach the title of the ancestor, as such, by levying upon and selling the property of the heir.—*W. D. McCurdy v. Sallie B. Kenan, supra.*

Suppose, as an illustration, that a son became the surety for the father; suppose that the father then made a will, whereby he gave a life estate in a plantation to said son, with remainder in fee to the children of said son; suppose that the father then died, and left no property save the plantation so disposed of by will; suppose the creditor then obtained a judgment against the son upon the note of the father, and, under an execution issued on that judgment, then sold said plantation as the *property of the son.* It seems plain that in such a case the purchaser would obtain only the life estate of the son. In that case, however, the creditor might well have treated the will as *nonexistent in so far as his indebtedness was concerned,* and by appropriate proceedings might well have had the property sold as the property of the estate of the father, and at such sale the purchaser would have obtained the title which resided in the father at the time of his death.

There is not, in reality, any difference between the case which we have above supposed and the case now under consideration.

7. For every wrong there is a remedy, and, in law, there is no right unless there is a remedy for its enforcement. The right and the remedy are so inseparably connected together that the legal recognition of the one is a plain, unmistakable guidepost to the other.

"No right without a remedy has long been the shibboleth of the common law, and it is needless to say that, if there were such a thing, it would be valueless."— Sims' Chancery Practice, appendix C, p. 525.

Of course it is but a truism which all must recognize that, to enforce a right, either legal or equitable, the remedy provided for its enforcement must be pursued. When a man dies, the title to his lands, if he leaves no will disposing of them, descends to his heirs, subject to the dower and homestead rights of his widow.  These lands are subject, however, to administration, and, in default of personalty, to the payment of debts.  Our laws point out *definitely* how the title which descends to the heir may be reached for the payment of the debts of the intestate.

In the instant case, as between the administrator of John Dudley, Sr., and Joseph R. Dudley and the children of Joseph R. Dudley, the title to the lands, by virtue of the conveyance to which we have above referred, was in Joseph R. Dudley and his said children.  The lands, therefore, were not subject to administration in the ordinary way.  Mary D. Witter had no right, when her execution issued, to sell the lands as the property of John Dudley, Sr., because John Dudley was then dead, and the title to the land was out of him.  She did have a right, however, by a bill filed for the purpose, with the fraudulent grantees as parties, to have, through a court of equity, the lands condemned to the payment of her debt.  Equity was there, ready to furnish her with an ample remedy; but she did not see proper to invoke that remedy.  On the contrary, she proceeded to have the lands sold as the property of Joseph R. Dudley, and she necessarily bought only the interest which Joseph R. Dudley had in the land.  If John Dudley, Sr., had lived, and an execution had been issued against him, and returned "no property," and *then* the lands had been sold under an alias execution issued against Joseph R. Dudley, we do not think that it would be seriously contended that Mary D. Witter had not elected

to treat the conveyance as valid, and not as null and void. The fact that John Dudley, Sr., was dead did not, we think, destroy the necessity which the law placed upon Mary D. Witter to manifest, in a way provided by law, her election to treat the conveyance as void.

Nothing seems to be plainer than that a creditor, as to whose debt a conveyance is fraudulent and void, must by some *affirmative* act, disaffirm the conveyance. In other words, to claim rights against the conveyance, he must, by some affirmative act, as by a sale under execution of the property as the property of the *fraudulent grantor,* or by a bill in equity to cancel the conveyance because of the fraud, show that he elects to treat the conveyance as null and void.

In this case the lands were sold as the property of the *alleged fraudulent grantees* to satisfy a debt for which they, along with the fraudulent grantor, were liable. It seems clear, therefore, that the purchaser at the sale acquired that title which the grantees in that deed had acquired by virtue of the deed, and only that title.

8. This appeal is, in reality, an application to this court to overrule its decision in *W. D. McCurdy v. Sallie B. Kenan, supra.* The case has been ably argued, and it has received careful consideration. We see no reason to depart from the decision of this case announced in the above-entitled cause, and the judgment of the court below is affirmed.

Affirmed.

Dowdell, C. J., and Anderson and Mayfield, JJ., concur.