70 So.2d 796

### CONTINENTAL INS. CO. et al.

### v.

### DOTSON et al.

### 7 Div. 188.

Supreme Court of Alabama.

Jan. 21, 1954.

Rehearing Denied March 18, 1954.

Marvin Williams, Jr., Davies & Williams, Birmingham, for appellants.

Keener & Keener, Centre, for appellee Ramell Dotson.

C. A. Wolfes, Fort Payne, for appellee Lillian B. Dotson.

STAKELY, Justice.

The question for decision is the liability vel non of Continental Insurance Company and London Assurance Company under fire insurance policies to which we shall later refer. We make this statement because other issues were in the case but are not presented on this appeal.

This case originated in a divorce action between Lillian B. Dotson as complainant against Clyde S. Dotson as respondent in the Circuit Court of DeKalb County, In Equity. A decree of divorce was granted to Lillian B. Dotson on September 10, 1943, and an award was made by the court of $80 per month as alimony and for the maintenance of their child. Subsequently there was a petition to reduce the alimony payments filed by Clyde S. Dotson on the ground of changed conditions. The court refused to grant the petition, but on August 9, 1950, on another petition filed by Clyde S. Dotson, a decree was rendered reducing future payments from $80 per month to $70 per month.

On September 26, 1950, Clyde S. Dotson again filed a petition asking that he be relieved of any further alimony payments to his former wife Lillian B. Dotson. In answer thereto Lillian B. Dotson filed an answer in which she denied that there had been any material change in the health or financial status of Clyde S. Dotson and further alleged that Clyde S. Dotson on September 25, 1950, had conveyed to his then wife, Ramell Dotson everything he then owned, including real and personal property, and that this conveyance was made with the intent to defraud Lillian B. Dotson and to deprive her of alimony. The answer of Lillian B. Dotson further alleged that on October 26, 1950, a dwelling house located on the land described in

the deed from Clyde S. Dotson to Ramell Dotson was destroyed by fire together with the household goods located therein. She further alleged that at the time of the fire the destroyed property was insured in policies issued by the Continental Insurance Company with $2,500 on the dwelling and $1,500 on the household goods and in the London Assurance Company with $1,500 on the dwelling and $500 on the household goods. She further alleged that the policies had not been paid and that Ramell Dotson was claiming such insurance by reason of the deed and endorsements of the policies to her.

The answer of Lillian B. Dotson asked that Ramell Dotson and the London Assurance Company and the Continental Insurance Company be made cross-respondents and further asked that the court increase her alimony allowance, set aside the conveyance from Clyde S. Dotson to Ramell Dotson as fraudulent and direct the insurance companies to pay into court the amount due under their policies and that a decree for the alimony in default and attorney's fees be rendered in her favor with a lien therefor on the proceeds of insurance policies.

Each of the insurance companies filed an answer to the petition of Lillian B. Dotson in which they alleged that the conveyance of September 25, 1950, from Clyde S. Dotson to Ramell Dotson was fraudulent and void. They admitted the issuance of the policies to Clyde S. Dotson and the destruction of the insured property on October 26, 1950 by fire. They alleged that endorsements had been placed on the insurance policies after the fire showing Ramell Dotson to be the owner of the insured property and alleged that the indorsements were null and void and of no force and effect and that Ramell Dotson was not the owner of the insured property at the time of the fire.

The insurance companies further alleged that the insured property was willfully burned through the design of Clyde S. Dotson or that the insured property was destroyed through the gross negligence of Clyde S. Dotson. The insurance companies asked that their answer be taken as a cross bill against Ramell Dotson and Clyde S. Dotson and that the court decree that the policies were null and void and that the insurance companies were not indebted to either Clyde S. Dotson or Ramell Dotson.

Clyde S. Dotson in answer to the cross-bill of each of the insurance companies filed an answer in which in effect he denied that the conveyance from him to Ramell Dotson was fraudulent and averred that the insured property was conveyed by him to Ramell Dotson by a valid deed and an endorsement was placed on each of the policies recognizing that Ramell Dotson, his wife, was the owner of the property and that any loss or damage due was payable to her and that she was entitled to the proceeds of the policies.

Ramell Dotson likewise filed an answer and cross-bill to the answer and cross-bill of each of the insurance companies in which in effect she claimed that she was the owner of the insured property at the time of the fire by virtue of a deed from Clyde S. Dotson, her husband, and further averred that on September 25, 1950, the policies had been endorsed to show that she was the owner of the property and any loss to the property should be payable to her. She claimed that these endorsements were in full force and effect at the time of the fire and that each of the insurance companies was indebted to her in the full amount of the policy with interest and asked that the court award her judgment against each of these companies.

Each of the insurance companies filed an answer to the cross-bill of Ramell Dotson in which the insurance company denied that it was indebted in any amount to Ramell Dotson and again averred that the alleged conveyance from Clyde S. Dotson to Ramell Dotson was fraudulent and void and that the alleged endorsement on the insurance policies was null and void and of no force and effect. It was further averred that the endorsements on the policies were executed with the knowledge of

the fact that the alleged conveyance from Clyde S. Dotson to Ramell Dotson was fraudulent.

The testimony in the case is briefly summarized as follows. As stated, Lillian B. Dotson was divorced from Clyde S. Dotson on September 10, 1943 and awarded alimony for her support and maintenance of their child. Thereafter Clyde S. Dotson married again. His second wife was Ramell Dotson. After his second marriage Clyde S. Dotson and Ramell Dotson resided near Center, Alabama, where Clyde S. Dotson owned and operated a business known as the Bargain Store. The home and the household property therein contained was insured by Clyde S. Dotson through the Johnson Insurance Agency of Center, Alabama, on April 1, 1950. This insurance was carried in a policy for $4,000 issued by the Continental Insurance Company with a coverage of $2,500 on the dwelling house and $1,500 on the household goods therein. The other policy was issued by the London Assurance Company in the amount of $2,000 of which $1,500 was on the dwelling and $500 on the household goods therein. Between the time of the original divorce in 1943 and September 26, 1950, Clyde S. Dotson made several efforts to have the amount of alimony payable to Lillian B. Dotson reduced and finally did secure a reduction from $80 per month to $70 per month in the decree dated August 9, 1950. The evidence clearly shows that during the year 1950 and theretofore Clyde S. Dotson and Ramell Dotson had complained about the alimony Clyde S. Dotson had to pay to Lillian B. Dotson and had stated that if necessary Clyde S. Dotson would convey all of his property to his second wife in order to get out of paying this alimony. On September 1, 1950, by deed which was acknowledged on September 25, 1950 and recorded on September 25, 1950, Clyde S. Dotson did convey to Ramell Dotson all of his property, including the dwelling house and household goods therein. The consideration expressed in this deed was the assumption by Ramell Dotson of debts owing by Clyde S. Dotson.

On September 26, 1950, the day after this conveyance was recorded, Clyde S. Dotson again filed a petition in the Circuit Court, in Equity, asking that the amount of alimony payments due to his first wife be reduced. Before any action, however, was taken on this petition and on October 26, 1950, the dwelling house and personal property therein was destroyed by fire.

On the night the fire occurred, a Miss Emalene Edwards, at the request of Mrs. Ramell Dotson, accompanied Mrs. Ramell Dotson to her home to spend the night. When they arrived at the home, which was the insured residence, it was found that Clyde S. Dotson had been drinking. Clyde S. Dotson and his wife Ramell Dotson got into an argument and tendencies of the evidence show that both she and Miss Edwards were run out of the house by Clyde S. Dotson in his drunken rage. He actually took one or two shots at the women before they escaped through a bedroom window. After leaving their house they went to the house of a neighbor who drove them to town where they reported the matter to the sheriff and tried to get the sheriff to go to the Dotson home, Mrs. Dotson stating that she was afraid Mr. Dotson would either kill himself or burn the house down. The next time Clyde Dotson was seen was a short time before the house was discovered on fire at which time he was at his store in Center, which was some ten miles from the scene of the fire. Mr. Dotson stayed at the store only a short time and then started out in a car for Atlanta, Georgia. He only got as far as Buchanan, Georgia, and spent the night in his car at that point. He came back to Center the next morning and as he approached the town he was noticed by an acquaintance, who could tell that he was not in a normal condition, because of the way in which he was driving his car. The acquaintance stopped Clyde Dotson and drove the car for him to the Dotson residence. Tendencies of the evidence showed that Dotson did not know about the fire until he got back to Center.

Sometime after the fire occurred the policies of insurance were procured by Harold Johnson of the Johnson Insurance Agency from Mrs. Ramell Dotson and

504

with knowledge of all parties that the fire had occurred and with knowledge that the property had been conveyed before the fire from Clyde S. Dotson to Ramell Dotson, the Johnson Insurance Agency, General Agents for both Continental Insurance Company and London Assurance Company, issued endorsements and attached them to the policies, showing that the property had been transferred from Clyde S. Dotson to Mrs. Clyde S. Dotson and that the insurance was payable to her. These endorsements although not actually issued and attached to the policies until after the fire, were dated back to September 25, 1950, the date of the recordation of the conveyance from Clyde S. Dotson to Ramell Dotson. Tendencies of the evidence showed that Clyde S. Dotson prior to the fire told Mr. Earl Johnson of the Johnson Insurance Agency about his conveyance to his wife Ramell Dotson and that he had done this on account of the alimony situation and at that time he asked him to transfer the policies to his wife. "I just asked him, said I wanted it transferred to her anyway on account of the court proceedings we had had." When asked what did he (Johnson) say about it, he answered, "O. K. Yes, sir."

Tendencies of the evidence further show that the insurance companies with knowledge of the facts regarding the ownership of the property through their general agents participated in the endorsements of the policies and entered into negotiations and investigations with Ramell Dotson concerning payment of the claims. The insurance companies did not at any time deny their liability under the policies until the institution of this litigation against them.

The case was heard orally before the court and on the issues made by the pleadings the court entered in substance the following decree. (1) That Clyde S. Dotson was not entitled to any reduction in the amount of alimony to be paid to his former wife Lillian B. Dotson. (2) That Lillian B. Dotson was entitled to the relief asked for under her cross bill and that the conveyance from Clyde S. Dot-

son to Ramell Dotson be set aside and held for naught. (3) That the transfers or endorsements of the insurance policies, though made after the fire, are valid. (4) That Lillian B. Dotson have and recover from Clyde S. Dotson and also of Ramell Dotson insofar as her interest in the recovery against the insurance companies is concerned, the sum of $1610, which was the amount due for alimony, and that a lien be fixed upon the amount recovered by Ramell Dotson for the payment of that sum. (5) That Ramell Dotson have and recover of Continental Insurance Company the sum of $4300 under its policy and also have and recover of London Assurance Company the sum of $2150 under its policy. (6) That Lillian B. Dotson have and recover of Clyde S. Dotson the sum of $250 as a reasonable attorneys' fee.

Only Continental Insurance Company and London Assurance Company took an appeal from the decree of the lower court and the only assignments of error presented on this appeal are the assignments of error made by these two companies.

I. The insurance companies insist that the deed from Clyde S. Dotson to Ramell Dotson, dated September 1, 1950 and recorded September 25, 1950, is void and of no effect. Hence, it is argued there is no liability under the policies against them. But this court has held that conveyances condemned by § 7, Title 20, Code of 1940, and its predecessors, are voidable as to creditors of the grantor, but valid as between the parties. It is only those who are injured by the fraudulent transaction who can complain. Heidt v. Wallace, 239 Ala. 246, 194 So. 501; McCurdy v. Kenon, 178 Ala. 345, 59 So. 489. It is obvious that the insurance companies cannot qualify as existing creditors of Clyde S. Dotson at the time the deed was executed and delivered and so cannot avail themselves of the transaction in denial of the rights of Ramell Dotson, the grantee in the deed. First National Bank of Birmingham v. Love, 232 Ala. 327, 167 So. 703.

But it is contended that apart from any right provided under the foregoing statute,

the policies became void by reason of the following clause contained in each of the policies:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

■ As we shall hereinafter show, however, the endorsements making the insurance payable to Ramell Dotson were placed on the policies by general agents of the companies, who at the time had knowledge of the conditions under which the deed was given, with the result that the companies are now estopped to contend that the policies were thereby rendered invalid. National Fire Ins. Co. of Hartford v. Tennessee Land Co., 224 Ala. 113, 139 So. 227; Tutton v. Liverpool & London & Globe Ins. Co., Ltd., 237 Ala. 230, 186 So. 551; London & Lancashire Ins. Co., Ltd., v. McWilliams, 215 Ala. 481, 110 So. 909.

So far as the insurance companies are concerned, the deed from Clyde S. Dotson to Ramell Dotson will be regarded as valid.

■ II. We are not impressed with the argument that the fire which destroyed the house was the result of wilful action or gross negligence on the part of Clyde S. Dotson. The proof shows that he was intoxicated on the occasion and in great anger got into a controversy with his wife over the presence of Emalene Edwards, but we do not consider that there is evidence to show that these things caused or contributed to the destruction of the house. He left the house about 7:30 on the night of the fire and there is no proof to connect him with the destruction of the house. There is only proof of his intoxication and anger about three or four hours before the house was destroyed. The court found that "the testimony in this cause does not support the contention of the insurance companies that Clyde S. Dotson purposely or negligently caused the property in question to be destroyed by fire." Certainly we will not say that this finding is palpably wrong. Leeth v. Perry, 257 Ala. 687, 60 So.2d 821.

■ III. The house was destroyed by fire on October 26, 1950 and yet the endorsements showing that the insurance in the event of loss by fire would be payable to Ramell Dotson were not actually put upon the policies until after the fire. So it is insisted that there was no insurance in effect when the property was destroyed. It is of course true that there can be no issuance of insurance on property which does not exist. Union Marine & General Ins. Co. v. Holmes, 249 Ala. 294, 31 So.2d 303. But the argument overlooks tendencies of the evidence which support the decree of the court. So far as the insurance companies are concerned, there was a valid conveyance from Clyde Dotson to Ramell Dotson on September 1, 1950 before the fire. Also before the fire the general agents of the companies were notified of the conveyance and asked to put endorsements on the policies so that Ramell Dotson would be protected. To this arrangement the general agents acting for the companies gave their assent before the fire. The mere fact that in carrying out the agreement, the endorsements were placed on the policies after the fire and dated back, cannot invalidate the insurance. There was no intent to insure property which did not exist. The insurance was on existing property owned by Clyde Dotson and the agreement recognized protection of the new owner, Ramell Dotson. There was no issuance of new insurance, but only an intent to keep in force insurance already in existence. "An insurance company has power, even after the occurrence of a loss, to make a voluntary correction, and an agent authorized to make contracts of insurance may, during the continuance of his agency, though subsequent to a loss, correct the policy issued by him to conform to the agreement of the parties." Day v. Fireman's Fund Ins. Co., 5 Cir., 67 F.2d 257, 258. See

also Ford v. U. S. Mutual Accident Relief Co., 148 Mass. 153, 19 N.E. 169, 1 L.R.A. 700; 29 Am.Jur. § 825, p. 628.

To all this may be added that after the fire occurred the insurance companies not only carried out the original agreement made by them through their agents, but by investigation of the fire, suggestion that claims be filed and acceptance of the claims for payment without protest until this litigation, the companies estopped themselves from denying the existence of the insurance. Southern States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 So. 63. The court correctly held that the insurance was in force and effect. So it was proper to establish the claims of Ramell Dotson with a lien thereon in favor of Lillian B. Dotson.

The decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.