## WARD v. BEVILL AND WIFE, Ex'rs, &c.

1. A widow upon the death of her husband may live where the family resided at that time, and take care of the estate without becoming liable as an executor *de son tort*, and if she administers, her possession will be referred to her title as such; but if she is dismissed from the administration, she should relinquish to her successor all the property she held as such.

2. Where one takes or retains possession of property under color of title, and in good faith, believing his right to be superior to that of the lawful administrator, he will not be chargeable as an executor *de son tort*, though his title prove to be indefensible. In such case the *bona fides* of the possession is a question of fact, referrible to the jury, and it is error for the court to decide it.

Writ of Error to the Circuit Court of Sumter.

THE plaintiff in error declared against the defendants in

assumpsit, for work and labor done, for money lent and advanced to, and money had and received by the supposed testator in his lifetime. Issues were joined and the cause submitted to a jury, who returned a verdict for the defendants, and judgment was rendered accordingly. A bill of exceptions was sealed at the instance of the plaintiff, from which it appears that evidence was adduced tending to show that William Yarborough, deceased, had made an absolute gift of a female slave named Jenny, to Charles H. Watkins, who was the former husband of the female plaintiff. Watkins had uninterrupted possession of Jenny for about six years, and up to the time of his death, which occurred in January, 1840 ; immediately after this event, his widow took possession of the slave, and on the 11th February, 1840, in connection with one Kindred Watkins, administered on the estate of the decedent. In September, 1840, these administrators reported the estate insolvent, and in the same month the orphans' court made an order so declaring it. On the 4th of November, 1843, they were discharged from the administration, and the letters previously granted to them revoked ; and James Hair appointed their successor on the same day, who in May, 1845, reported the estate insolvent ; and in July following an order was made so declaring it.

Jenny remained in the possession of the female defendant, during the period that the administration granted to her and her co-administrator continued, and up to the time of the marriage of herself and co-defendant, and they still retain her in their possession—never having been returned or accounted for as part of the decedent's estate.

The court charged the jury, that the facts proved did not make the defendants liable as executors *de son tort*. Thereupon the plaintiff prayed the court to charge the jury, that if the slave Jenny was the property of Charles H. Watkins at his death, and the defendant, Mrs. Bevill, intermeddled with her after that event, and before administering on his estate, and after administration was granted, did not treat her as the property of the estate, nor return her as a part of the assets, then she was liable as executrix *de son tort;* the taking out letters of administration without treating the slave as the property of the estate of the intestate, did not discharge her

from liability. *Further*—If Mrs. Bevill took possession of Jenny, after the death of her former husband, and she was not returned by the administrators as part of his estate, and she continued to hold possession after the letters of administration were revoked, then she became liable as executor *de son tort*. These several prayers for instructions to the jury were denied by the court.

The language in which the gift of Jenny was made by William Yarborough, *was to his daughter and the heirs of her body*—the delivery was to the daughter, in the absence of her husband; and evidence was adduced to show, that at the division and distribution of the father's estate, the slave was treated as his property, and so distributed to his daughter. But it was not disputed at the trial, that the gift by the father, amounted to an absolute gift to the husband.

R. H. SMITH for the plaintiff in error, contended that the acts of Mrs. Bevill were such as to make her an executor *de son tort*. [1 Wms. Ex. 136, 138; 1 Com. D. (c. 3.) 502.] After her removal, she was liable to be sued as executor in her own wrong. [4 M. & S. Rep. 175; 11 Vin. Ab. (M. 10,) 117, note to § 4; 2 Porter's R. 558; 5 B. & Ad. R. 744; 1 Dowl. & R. Rep. 409.] No suit could be maintained against her as administratrix after her removal, [3 Ala. Rep. 568;] although it might be otherwise in the case of a final settlement and distribution. [3 Ala. Rep. 13.]

An intermeddler may be sued as an executor *de son tort,* although there may be a rightful administrator. [5 Ala. R. 31 ? 1 Com. Dig. (C. 3,) 502.] Although an administrator who has not fully accounted may still be liable to an action as such, yet he can claim no exemption from the common liability, where the letters under which he acted have been revoked. If he would excuse himself from an action as a wrong doer, he must show that he has turned over the estate which came to his hands to the rightful administrator. [15 Mass. Rep. 325.]

S. W. INGE, for the defendants, made the following points:
1. To make one executor *de son tort* there must be a wrongful taking or intermeddling with the estate of the deceased,

(1 Lomax Ex'rs, 76 ;) if a party holds under a colorable title, he is not liable as such. [5 Al. Rep. 31.]

2. There cannot be an executor *de son tort* where there is a rightful administrator. [1 Lomax Ex'rs, 78.] And if such executor takes out letters of administration, it legalizes his previous tortious acts. [8 Johns. Rep. 97 ; 15 Mass. Rep. 324.]

3. The defendants, if liable at all, were liable in their character of administrator and administratrix ; and cannot therefore be charged as wrong doers. [Clay's Dig. 222, § 9 ; 8 Porter's Rep. 343.]

COLLIER, C. J.—It is laid down in general terms, that taking the goods of an intestate, or any intermeddling therewith by a stranger, will, as it respects creditors make him an executor *de so n tort*. [Densler, Ex'r, &c. v. Edwards, 5 Ala. Rep, 31 ; 1 Lomax on Ex. 76 ; 3 Litt. Rep. 163 ; 5 J. J. Marsh. Rep. 170 ; 12 Conn. Rep. 313 ; 4 Mass. Rep. 654;] Every act of intermeddling will not however charge a man as an executor in his own wrong ; if the interference is conservative merely, no such consequence will result from it. [1 Wms. on Ex. 139-40 ; 1 Lomax on Ex. 77 ; 4 McC. Rep. 286.] So if a person set up a colorable title in himself to the goods of the deceased, though he may not be able to make it out completely, he will not be deemed an executor *de son tort;* one who acquires possession under a fair claim of right does not become chargeable as such. [1 Lomax Ex. 77 ; 1 Esp. Ca. 335.]

It has been held that an executor *de son tort* may purge his wrong and legalize his tortious acts by taking out letters of administration. [15 Mass. Rep. 322 ; 8 Johns. Rep. 126.] Although administering by the wrong doer, will thus affect his intermediate acts, and justify a retainer, yet it will not defeat a suit previously commenced. [8 Johns. Ib.; 1 Root's Rep. 183.] Where administration has been committed to a third person, the executor *de son tort* must have delivered over the goods to the rightful administrator, before action commenced in order to be discharged from liability. [15 Mass. Rep. 325.]

Regularly it is said, there cannot be an executor *de son*

Ward v. Bevill, &c.

*tort* when there is a rightful executor or administrator; for if a stranger gets possession of the goods of the deceased after probate or administration granted, he is a trespasser to such executor or administrator, and may be sued as such. But if he take possession previous to that time, he may be charged as executor *de son tort*, because the lawful representative can only be charged to the extent of the assets that came to his hands. So if a stranger takes the goods of the deceased, and claim to be executor, pays or receives debts, or pays legacies, or otherwise intermeddle as an executor, he becomes an executor *de son tort;* and this although there be a rightful executor who had administered. And an executor in his his own wrong is liable to be sued as executor, not only by a creditor or legatee of the deceased, but also by the rightful executor or administrator; and it has been held he may be sued jointly with the lawful executor, or they may be sued severally. [1 Lomax on Ex. 78, and citations there made.]

*Further:* It has been adjudged that the question whether executor *de son tort,* or not, is a conclusion of law, and not to be left to the jury. Whether the party did certain acts is indeed a question for the jury; but when the facts are established, the court must deduce the legal result. [2 T. Rep. 99.]

This notice of adjudications touching the questions arising in the case at bar, are quite sufficient to show that the circuit court erred in its ruling upon the law. It was certainly allowable for Mrs. Watkins to continue her residence at the place where she lived previous to her husband's death, and to have taken care of the estate, until the appointment of a personal representative; and when administration was duly committed to herself and another, the law would refer the possession to the legal title, and consequently regard it as if in herself and co-administrator. Her possession then up to the time that she was dismissed from the administration, might be accounted for without treating her as a wrong doer. But her subsequent possession cannot be legalized upon any other hypothesis than the assertion of a claim of right, upon the ground that Jenny was her separate property, under the gift from her father, or in virtue of the distribution of his es-

26

tate. So far as we can determine from the facts recited in the bill of exceptions, we incline to think her title cannot be rested upon either basis; but in determining her liability as an executor *de son tort*, it is not indispensible to the success of the defence, that her right to the slave should be defensible. It is enough as we have seen, that the possession should have been taken or retained under color of title, and in good faith, under an opinion honestly entertained that it was paramount to the title of the lawful administrator of the deceased.

The *bona fides* of the possession of the defendants was a question of fact properly referrable to the jury. This question however, the court assumed to decide in instructing the jury that the facts proved did not render the defendants liable as executors *de son tort;* or, if the court did not determine this fact, the cause was improperly referred to the jury, and in such a manner as to prejudice the plaintiff.

Skinner v. Frierson & Crow, 8 Ala. Rep. 915, is altogether unlike the present case. It was there decided that when an administrator resigns pending a suit against him, the plaintiff is not compelled to make the succeeding administrator a party in his stead, though he has the privilege to do so ; but may proceed with the suit in order to charge the resigning administrator and his sureties; unless the resigning administrator also shows a due administration, or a transfer of all the assets to the succeeding administrator. It is not pretended that the female defendant and her co-administrator resigned their trust ; the proof is, that they were discharged from the administration, and the letters previously granted to them were revoked. Besides, this action was not commenced until after they had ceased to be administrators, and the defendants, if such be their character, became executors *de son tort.*

The consequence is, that the judgment of the circuit court is reversed, and the cause remanded.