COOKE v. FENNER & BEANE. (7 Div. 614.)

(Supreme Court of Alabama, April 8, 1926.
Rehearing Denied May 13, 1926.)

1. Fraudulent conveyances ⊚⇒263(1)—Bill, showing debt, nonpayment, and disposal of visible assets, held to show fraud against creditors by father and son to place latter's property beyond reach, with right of discovery and accounting in equity, and for subjection of proceeds in hands of father or personal decree against him, if placed beyond reach with fraudulent intent.

Bill by existing creditor, showing time and manner of incurring debt, recovery of judgment, return of execution unsatisfied, that it is still unpaid, and at time it was contracted debtor owned property subject to payment of debt, with sufficient description to identify property and its value, and that debtor and father jointly interested in several business enterprises conspired to .dispose of debtor's visible assets, and within few months did so, and concealed proceeds, held to present case of actual fraud with right of discovery and accounting in equity, and for subjection of proceeds in hands of father, or personal decree against him, if placed beyond reach with fraudulent intent.

2. Fraudulent conveyances ⊚⇒268—Amendment to bill in equity, showing fraud against creditors in disposal of debtor's property, held ·to make case of constructive or actual fraud in alternative· as to property specified as .transferred by debtor to father.

Amendment to bill in equity, showing fraud against creditors by ·placing debtor's property beyond their reach, alleging that certain named items of property were sold or transferred by debtor to father, that sales were voluntary, or, if for adequate consideration, were with intent to defraud ·creditors,· in which fraud vendee participated or had knowledge, putting him on inquiry, held to make case of constructive or actual fraud in alternative as to those items.

3. Fraudulent conveyances ⊚⇒182(1)—Vendee of property with notice of fraud on creditors is liable to personal decree ·for converting ·property by sale to third persons.

Vendee of property, transferred in fraud of creditors, with actual or constructive notice of fraud, is liable to personal decree for conversion of property by sale to third person not exceeding value of property converted.

4. Fraudulent conveyances ⊚⇒182(5).

As respects personal liability, property, transferred by debtor in fraud of creditors, or its proceeds, become equitable assets of debtor in hands of transferee with notice.

5. Estoppel ⊚⇒74(4)—Possession by son with claim of title, though father is record owner, and continues to pay taxes, does not authorize extension of credit to son, estopping father from reclaiming land.

Where record title holder continues to pay ·taxes, possession by his son under claim of title does not alone authorize extension of credit to him on faith of such title so as to estop father from reclaiming land.

6. Estoppel ⊚⇒90·(1)—Knowledge and acquiescence by record owner that son was including land in financial statements as basis of credit would estop owner from reclaiming land.

Knowledge of record owner that his son was including land in financial·statements as basis of credit and acquiescence therein would estop owner from reclaiming land as against creditors relying on statement.

7. Fraudulent conveyances ⊚⇒299(1).

Evidence held to show that debtor transferring stock to father, alleged in fraud of creditors, was equitable owner thereof.

8. Appeal and error ⊚⇒671(3).

Where documentary evidence is offered and considered below, but is not before appellate court, latter cannot review decision involving such evidence.

9. Appeal and error ⊚⇒671(3)—Appellate court may review decisions involving documentary evidence offered below and not brought up on appeal, where contents are sufficiently shown by other parts of record, or are immaterial to inquiry, or could not materially affect findings of fact.

The rule that, where documentary evidence is offered and considered below, but is not before appellate court, latter cannot review decision on questions involving such evidence is not applicable, where contents of documents are sufficiently shown without dispute by other parts of record, or where their nature becomes immaterial to inquiry, or where record affirmatively shows facts so clearly that documents could have no effect thereon.

10. Appeal and error ⊚⇒1008(1).

Finding of trial court who heard evidence orally will be given all weight of verdict of jury by appellate court.

11. Fraudulent conveyances ⊚⇒65.

Intent to defraud one creditor by transfer of property inures to benefit of all existing creditors.

12. Fraudulent conveyances ⊚⇒295(1).

Indicia of fraud must be overcome by clear, full, and satisfactory evidence.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, St. Clair County; W. J. Martin, Judge.

Bill in equity by C. E. Fenner and A. C. Beane, partners doing business as Fenner & Beane, against W. P. Cooke and La Fayette Cooke. From a decree against respondent La Fayette Cooke appeals. Affirmed.

M. M. Smith, of Pell City, for appellant.

If an attempt is made to show a conspiracy, a foundation must first be laid by proof sufficient to establish prima facie the fact of conspiracy. Mower v. McCarthy, 79 Vt. 142, 64 A. 578, 118 Am. St. Rep. 942, 7 L. R. A. (N. S.) 418; Duplex Printing Co. v. Deering, 254 U. S. 443, 65 L. Ed. 349, 41 S. Ct. 172, 16 A. L. R. 196; 8 Cyc. 620; Com. v. Waterman, 122 Mass. 43. To maintain a bill in equity as for a conspiracy, it must appear that the object relied on as the basis of the conspiracy was unlawful. McConley v. Tierney, 61 Am. St. Rep. 770. A parol gift of land is wholly invalid, and vests no title or right in the donee. 20 Cyc. 1200; Collins v. Johnson, 57 Ala. 304. The facts out of which an alleged fraud arise must be stated; a mere general averment is not sufficient. Flewellen v. Crane, 58 Ala. 627; Ft. Payne F. Co. v. Ft. Payne C. & I. Co., 96 Ala. 476, 11 So. 439, 38 Am. St. Rep. 109; Skinner v. Southern Gro. Co., 174 Ala. 359, 56 So. 916; National Park Bank v. L. & N. R. Co., 199 Ala. 192, 74 So. 69; L. & N. R. Co. v. National Park Bank, 188 Ala. 109, 65 So. 1003. The burden of proof is upon the complaining creditor to prove the existence of fraudulent intent, and that such intent was known to the grantee in the conveyance assailed. Allen v. Riddle, 141 Ala. 621, 37 So. 680; Pippin v. Tapia, 148 Ala. 353, 42 So. 545; McHan v. Ordway, 76 Ala. 347.

Percy, Benners & Burr and J. R. Forman, all of Birmingham, for appellees.

A conveyance made to hinder, delay, or defraud creditors is void. Code 1923, § 8038. As against existing creditors, voluntary conveyances are per se fraudulent. Leonard v. Roden Gro. Co., 183 Ala. 578, 62 So. 782; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 So. 139; Murphy v. Pipkin, 191 Ala. 115, 67 So. 675; Ledbetter v. Davenport, 154 Ala. 336, 45 So. 467, 129 Am. St. Rep. 62. Transactions between parent and child are closely scrutinized. Watters-Tonge L. Co. v. Knox, 206 Ala. 183, 89 So. 497; Martin v. Berry, 116 Ala. 233, 22 So. 493; Russell v. Davis, 133 Ala. 657, 31 So. 514, 91 Am. St. Rep. 56; Penney v. McCulloch, 134 Ala. 580, 33 So. 665. Payment of full value will not protect the purchaser with notice of the debtor's intent to place his property beyond the reach of his creditors. Lehman, Durr & Co. v. Kelly, 68 Ala. 192; Sutterer v. Morris F. Co., 208 Ala. 687, 95 So. 166. The appellant, purchaser, became a trustee for the creditors for the proceeds of the property conveyed and personally liable therefor. Cook v. Clark, 212 Ala. 257, 102 So. 213. Where evidence is ore tenus before the chancellor, findings of fact will be treated like a verdict of a jury. Fitzpatrick v. Stringer, 200 Ala. 574, 76 So. 932; Caldwell v. Caldwell, 200 Ala. 570, 76 So. 928.

BOULDIN, J. [1] A bill showing complainant to be an existing creditor, the time and manner in which the debt was incurred, the recovery of judgment thereon, return of execution "no property found," and that it is still unpaid, that at the time the debt was contracted the debtor owned property subject to the payment of debts, giving such description as to identify the same and its value, that the debtor and his father, jointly interested in several business enterprises named, conspired together to sell or dispose of all the debtor's visible assets, for the purpose of hindering, delaying or defrauding the creditors of the debtor, and accordingly, within a few months, did dispose of such property, placing the same and its proceeds beyond the reach of creditors by ordinary legal process, that the proceeds of the property are so covered up and concealed as to render a discovery necessary, presents a case of actual fraud on the part of father and son, with right to discovery and accounting, in equity, and for subjection of the proceeds of property in the hands of the father, or a personal decree against him, if placed beyond reach with fraudulent intent.

[2-4] An amendment alleging that certain named items of the property were sold or transferred by the debtor son to the father, that the sales were voluntary, or, if for valuable and adequate consideration, were with the intent on the part of the debtor to hinder or defraud his creditors, in which fraud the vendee participated, or had knowledge of facts, putting him on inquiry, makes a case of constructive or actual fraud in the alternative as to these items of property. On averment and proof that the vendee had thereafter converted the property by sale to third persons, the vendee became liable to personal decree for the amout of the debt, not exceeding the value of the property converted. The property or proceeds became equitable assets of the debtor in his hands. The bill as amended conforms to the outline above given, and the demurrer thereto was properly overruled.

It is clear from answers and proof that soon after defendant W. P. Cooke contracted the debt to complainants, Fenner & Beane, he had a difficulty with, shot and seriously wounded, Dr. Wilbanks; that within a few months thereafter W. P. Cooke did dispose of all his property in such way as to put it beyond the reach of legal process. La Fayette Cooke, his father, was jointly interested in several business enterprises, and was active in bringing about this result. Avoiding a prolonged discussion of facts, we give, after careful study

of the record, our conclusions on such features of the case as deemed proper.

[5, 6] The parol gift of a farm by La Fayette Cooke to W. P. Cooke, many years prior to these events, followed by possession and perception of the rents, whether conditioned upon W. P. Cooke's refraining from drink or not, is not sufficiently shown to have been held adversely for such length of time as to give him a legal title. The record title remaining in the father, and his continuing to pay the taxes, the possession of W. P. Cooke with claim of title would not alone authorize persons to extend credit to W. P. Cooke on the faith of his title so as to estop his father from reclaiming the land. If his father knew he was including the land in financial statements as a basis of credit, and acquiesced therein, he would be estopped to reclaim the land as against creditors extending credit on the basis of such statement. It does not sufficiently appear the father knew of the financial statements furnished by W. P. Cooke on which complainants relied. The only pertinence of the evidence of the father's re-claiming this land after the difficulty with Dr. Wilbanks is the light it may shed on the general movement resulting in depriving W. P. Cooke of all indicia of ownership in property. W. P. Cooke, at the time of trouble with Dr. Wilbanks, owned seven shares of stock in Bank of Odenville, and was cashier of the bank; his father being president and principal stockholder. La Fayette Cooke took charge of the affairs of the bank, discharged W. P. Cooke, and soon thereafter purchased his shares in the bank. We do not find ground for criticism in taking over the management of the bank under the conditions of public feeling tending or actually developing a run on the bank as appears from the evidence. Sworn answers to the bill and to interrogatories to La Fayette Cooke repeatedly deposing that he paid for the stock in cash, giving details of W. P. Cooke's call on him for money, varied by his final testimony that he applied the proceeds of the stock to payment of a note held by the bank against W. P. Cooke, show such inaccuracy in making sworn statements as to invite scrutiny, and tend to weaken the probative force of respondent's evidence. We need not determine what is the correct version as to this transaction; but we must look to it in connection with similar contradictions throughout the record in arriving at our conclusion.

[7] We conclude, on the whole evidence, that W. P. Cooke was the owner in equity of one-third interest in Odenville Heading Mill, incorporated as St. Clair Cooperage Company. The repeated sworn statements of both respondents to that effect, corroborated by other evidence, with evidence that La Fayette Cooke bought it for $8,500 or $8,000, after deducting cash discount, paid for it in cash, or placed it on deposit for account of W. P. Cooke, all recanted by denial of any such ownership after discovery that the bank records at variance therewith had become available to complainants, we find difficult to account for on mere failure of memory.

The mortgage given to La Fayette Cooke by the corporation while the stock was largely owned by outside parties was followed by taking over all the stock by the Cookes, and the successful management of the business by W. P. Cooke, as evidenced by a value of $25,000 in 1920.

We conclude, under all the evidence, the one-third interest of W. P. Cooke was not subject to this mortgage. Rather, the mortgage in the name of La Fayette Cooke, like the holding of stock, was all in recognition of W. P. Cooke's ownership of one-third interest in the whole. Whether the mortgage was foreclosed by La Fayette Cooke in order to pass a more satisfactory title to the purchaser or for other motive, W. P. Cooke's equitable ownership of one-third interest and the proceeds thereof was recognized both before and after foreclosure. No matter in what form the legal title to the corporate assets was held, nor in what name the stock stood on the books, all beneficial interest therein was, in equity, subject to payment of debt.

We conclude W. P. Cooke owned one-half the majority stock in Leeds Cooperage Company represented in Leeds Heading Mill; that on a sale to Culverhouse W. P. Cooke was entitled to receive $7,000. Stated differently, the $14,000 received on the sale was not subject to a deduction of $6,000 in favor of La Fayette Cooke, leaving only $4,000 due to W. P. Cooke.

In dealing with questions of payment to W. P. Cooke of the amounts realized on his share in these Heading Mills, we note that in the amended answer, followed by the final evidence, there is a denial by La Fayette Cooke of all interest of W. P. Cooke in the Odenville plant, and reliance is had upon a mortgage foreclosure. At the same time a contention is continued that La Fayette Cooke at that stage gave W. P. Cooke $8,000, on that account, or intended so to do, but for a discovery that W. P. Cooke had drawn heavily on the bank account of that concern in financing his individual cotton business under the name of Simpson Cotton Company.

It appears the business of the several concerns, as well as the individual parties, was transacted through banking accounts with Bank of Odenville; that the proceeds of the sale of the Leeds plant, as well as alleged drafts on La Fayette Cooke or Odenville Cooperage Company, passed through that bank. It appears that during these operations La Fayette Cooke opened up an account in the name of "La Fayette Cooke Trust Fund," an account concealed from W. P. Cooke, by carrying at an unexpected place in the bank ledger. We conclude that $4,000 of

the proceeds of the Leeds plant, in which W. P. Cooke had an interest of as much as $3,000, was transferred to this account, and was never paid. How much of and when the funds of the Odenville Heading Mill were drawn for Simpson Cotton Company, and whether it had all been replaced from the cotton business, does not appear, and the bank accounts would shed much light thereon. Many other features of the case involve matters upon which the bank books shed light. The record shows the ledger sheets showing accounts of L. Cooke, W. P. Cooke, St. Clair Cooperage Company, Leeds Cooperage Company, Simpson Cotton Company, and La Fayette Cooke Trust Fund were all offered in evidence and considered by the court below.

[8, 9] The rule is that, when documentary evidence is offered, considered by the court below, and not before us on appeal, we cannot review the decision of the court below on questions involving a consideration of such evidence. The rule does not apply if the contents of the documents are sufficiently shown without dispute by other parts of the record, or where from the nature of the documents they become immaterial to the particular inquiry under review, or the record affirmatively shows the facts by such clear evidence that the documents could not, in the nature of the case, materially affect the findings of fact. In this case these accounts would not only shed light upon the testimony given orally before the trial judge, but further light on the contention that the sweeping disposition of all W. P. Cooke's estate, individual as well as joint, including real estate located in another county, stocks and bonds in other corporations, United States bonds and savings stamps, even mortgage on his home, all aggregating some $35,000, was done to meet losses in cotton speculations conducted largely through the bank in the name of Simpson Cotton Company.

[10] Much testimony on the trial was heard orally before the court. He had the opportunity to see and observe the manner of witnesses on direct and cross-examination, and to weigh the evidence attempting to explain wholly different statements theretofore made on oath. In such case we must give his finding all the weight of the verdict of a jury.

[11] The evidence gives support to his finding upon the theory of actual fraud, a covering up and disposal of W. P. Cooke's property in anticipation of a liability being fastened on him because of the trouble with Dr. Wilbanks. An intent to defraud one creditor inures to all; it infects the transaction as fraudulent against all existing creditors.

[12] The relation of father and son, their intimate business relations, their common knowledge of the conditions growing out of the shooting, the disposition of all holdings joint and several, in rapid succession, all call for clear, full, satisfactory evidence to overcome the indicia of fraud so apparent in the cause.

The evidence further supports the view that La Fayette Cooke, at the commencement of the suit, had money or effects in his hands which equitably belonged to W. P. Cooke, and were subject to his debts.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.