167 So. 703

**FIRST NAT. BANK OF BIRMINGHAM v. LOVE et al.**

**6 Div. 818, 838, 841.**

Supreme Court of Alabama.

March 12, 1936.

Rehearing Denied May 7, 1936.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

Howze & Brown, of Birmingham, for cross-appellant Penn Mutual Life Ins. Co. and appellee Love.

et al., 228 Ala. 258, 153 So. 189. We there held the trust instrument valid in so far as the proceeds of the life insurance policies were charged with the payment of bank indebtedness of the grantor and in so far as such proceeds arose from policies payable in the first instance to the wife and children of the insured, not exceeding their statutory exemptions. In so far as the trust agreement made the wife and children of the insured beneficiaries of policies theretofore payable to the insured, a mere gift, it was held, on the authority of a long list of cases there cited, constructively fraudulent and void as against existing creditors of the insured.

On final hearing the trial court found that the trustee had received proceeds of this latter class in the sum of $61,032.32, and decreed: "1. That The First National Bank of Birmingham holds as constructive trustee for the benefit of the creditors of W. C. Gewin, deceased, whose claims existed prior to March 25, 1929, and whose claims are not barred by the Statute of Non-Claims, and who are not for any other reason barred from participating, the sum of $61,032.32, with interest thereon from the 26th day of May, 1933."

Appellant, First National Bank of Birmingham, does not question this as the true amount of such funds coming to the hands of the trustee named in the trust instrument nor appellant's responsibility as a successor in the position of trustee; but does question its liability for such amount with interest thereon upon several grounds presented in answer and in evidence. Among other things, it is insisted that such liability, if any, should be limited to the fund in hand, or to the property in which the fund had been invested, at the time this bill was filed.

In considering this question and others hereinafter discussed we briefly review the course of events pertinent to such inquiries.

W. C. Gewin, the insured, died some four months after creating the life insurance trust. He left a will in which his wife and children were chief beneficiaries. The bank, trustee in the life insurance trust, was also named as executor of his will, and duly qualified as such. The will imposed on the executor active continuing duties, such as keeping the estate together until the youngest child came of age. So here we have the case of several trust relations in the same trustee, viz., the life insurance trust, and special trusts imposed by the will. In both of these the wife and children were the

Benj. Leader and Saml. Tenenbaum, both of Birmingham, for cross-appellant Steiner Bros.

BOULDIN, Justice.

This is a creditor's bill to set aside an instrument creating a "Life Insurance Trust," upon the ground that it was fraudulent and void as against existing creditors of the grantor, and to subject the proceeds of the policies in the hands of the trustee to the payment of the grantor's pre-existing debts.

Pertinent provisions of the instrument appear in the report on former appeal. Love et al. v. First Nat. Bank of Birmingham

beneficiaries whose interest the trustee was under duty to conserve.

Then the executor as such sustained a relation of trust, first on behalf of creditors generally in the estate subject to administration; finally, a relation of trustee of this special fund, under a constructive trust in equity in favor of pre-existing creditors.

The estate of Dr. Gewin consisted in much of a great many tracts and parcels of realty, severally encumbered by mortgages, aggregating near $500,000. On the basis of appraisals made prior and shortly after his death and the qualification of his executor, it appeared the estate was solvent, and there were valuable equities in these properties to be conserved for the devisees under the will. Interest and installment payments were rapidly accruing on these mortgages, and there appeared to be danger of loss by foreclosure unless funds be found to meet them. Thereupon, some four months after grant of letters testamentary, the bank presented a petition to the court of equity in which the administration was pending, setting up these facts, as well as its relations as trustee in the insurance trust and as executor of the estate, and asking authority, as trustee of the insurance funds, to make a loan from said funds to the executor of the estate, the executor giving such trustee, as security, a mortgage on one unencumbered parcel of realty, known as the hospital property, then appraised at a value in excess of the proposed loan. A decree was entered accordingly, and the trustee of the insurance trust loaned to the executor of the estate $70,000 of the insurance fund, taking the note of the executor and a mortgage on the property mentioned as security. Owing to economic conditions, real estate values steadily declined, until in 1932 a reappraisal disclosed the estate had become insolvent, was so reported, and a decree of insolvency duly entered. Thereupon the trustee foreclosed the unpaid mortgage on the hospital property, bought it in at a price of $50,000, and holds the same. Its value, at the time of the final hearing, was estimated at $22,500.

The bank insists that, if otherwise entitled to relief, the creditors due to share in the insurance fund, as existing creditors of the donor when the insurance trust was created, should be limited to this property, in so far as such fund was invested therein.

It is well settled that the grantee in a fraudulent conveyance holds the property in trust, a constructive trust recognized and enforced in equity, on behalf of existing creditors of the grantor; that he disposes of same at his peril, and is personally liable for the value thereof. This rule has been applied in Alabama to cases of constructive fraud, which arise in every case of gift, regardless of the solvency of the donor or any notice to the donee of existing indebtedness. It has been applied in insurance cases. Lehman et al. v. Gunn et al., 124 Ala. 213, 27 So. 475, 51 L.R.A. 112, 82 Am.St.Rep. 159; Fearn, Ex'r, v. Ward, Adm'r, 80 Ala. 555, 2 So. 114; Lockard v. Nash, Adm'r, etc., 64 Ala. 385; Pope et al. v. Carter et al., 210 Ala. 533, 98 So. 726; Crawford et al. v. Kirksey et al., 55 Ala. 282, 28 Am.Rep. 704; Dickinson et al. v. National Bank of the Republic, 98 Ala. 546, 14 So. 550; Cook v. Clark, Davis & Co. et al., 212 Ala. 257, 102 So. 213; Cooke v. Fenner & Beane, 214 Ala. 558, 108 So. 370; Kavanaugh & Wife v. Thompson & Wife et al., 16 Ala. 817; Weingarten Bros. et al. v. Marcus et al., 121 Ala. 187, 25 So. 852; Metcalf et al. v. Arnold et al., 132 Ala. 74, 32 So. 763; Boutwell et al. v. Drinkard et al., 230 Ala. 212, 160 So. 349; 27 C.J. 669 and 855; 65 C.J. 979; Moore on Fraudulent Conveyances, vol. 2, § 36, p. 685.

We are not insensible of the force of the argument that injustice may result to a donee from a wholly solvent donor, not known to be indebted at the time, where such donee, before any notice that any one has a claim on such property, may treat it as his own, use it or lose it, and later be called to answer as for a trust he did not know existed. Admittedly the doctrine of a constructive trust imposed upon a grantee in a conveyance infected with actual fraud rests on a sound basis in justice and morals. It appears in many states the rule as to voluntary conveyances, being constructively fraudulent per se, is not so rigid as with us. Whether ours is the better rule declaring that the taking of a gift charges the donee with notice that, if the donor does not meet his debts for which the property was liable at the time of the gift, he will be held in equity accountable as constructive trustee, we do not deem a proper subject to be now reopened.

We may add, however, that, if the rule of constructive trusts should be modified to meet the special equities of the particular case, we do not find this such a case. It appears that at the time the bank accepted the insurance trust it had full knowledge, through its dealing with a real estate trust,

then and theretofore existing, of the heavy mortgage indebtedness of Dr. Gewin, to whom due, its security, and the terms of payment. All this appeared at the time on the records of the bank. Moreover, it reasonably appears that, at the time the insurance fund was loaned to the estate, the bank was advised that pre-existing creditors had priority of claim on that fund, and, a little later, to avoid a suit to that end, paid off a creditor, who, it was feared, would institute such a suit as this. Without question, the bank was proceeding in good faith to protect the equities of all parties as matters then appeared; that is to say, work out the entire matter so as to pay the pre-existing indebtedness, all indebtedness, and save the equities in the lands to the devisees under the will.

But the bank took the chances on this, and its mistake cannot be visited on those whose funds, speaking in terms of equity, were thus diverted.

It is further argued that the authorization of this loan by decree of the court was res adjudicata and binding on complaining creditors. They were not parties to the proceeding. An administrator ad litem was appointed to represent the estate of the decedent. He represented the general creditors of the estate as such, their interest in the assets of the estate.

As between the grantor and the grantee in a conveyance, fraudulent and void at the instance of creditors, the title is in the grantee. The grantor can take nothing when the conveyance is avoided as to creditors. It follows this fund was, in no event, a part of the assets of the estate available to general creditors. The administrator ad litem, therefore, had no function to protect the equity of these pre-existing creditors in this insurance fund. In equity it was their fund, not that of the estate to be represented by an administrator ad litem. But, it is further argued, one creditor of this class was made a party respondent to the proceedings with allegations showing the creditors were numerous, were unknown, and the time for presenting claims had not expired. So, it is argued, the class was bound by such representation. Suffice to say no question as to the equitable rights of these pre-existing creditors in this fund was ever presented in any way.

Neither bill nor answer called any such situation to the attention of the court. The issue presented was the advisability of the estate borrowing a trust fund whose beneficial ownership was the same as the equities in the land sought to be protected.

Indeed, it appears to have been desired to avoid bringing to an issue the equities of pre-existing creditors lest the chosen plan to take care of them and all others be hindered or thwarted.

The suggestion that the trustee in the insurance trust is to be treated as representing these creditors is alike untenable. Its position was essentially antagonistic to theirs. As such trustee, the bank proceeded as the representative of the interest of the beneficiaries named in the trust agreement, the wife and children of the donor.

It is further argued the suit is barred by laches.

A creditor's bill to set aside a fraudulent conveyance of personal property, in the absence of special matter of estoppel, is governed by the statute of limitation of six years (Code 1923, § 8944). Lockard v. Nash, Adm'r, etc., 64 Ala. 385; Snodgrass v. Branch Bank at Decatur, 25 Ala. 161, 60 Am.Dec. 505; Martin v. Branch Bank at Decatur, 31 Ala. 115.

Six years had not elapsed here. It does not appear when these complainants acquired knowledge of this conveyance, constructively fraudulent.

It is suggested the trustee under the trust instrument was under a duty to support the trust therein created, and parties having equities opposed thereto should promptly act if they proposed to assail such trust. The duty to support and protect the trust applied to the superior trust in favor of these creditors. He was charged with notice of same when he accepted the trust under the instrument. No rules of equity will sustain the support of an inferior as against the superior trust assumed by the same trustee.

Because the trust was valid in part cannot change the equities. The trustee knew that he was taking a voluntary conveyance, void as to creditors of the grantor as to so much of the fund as was not pledged to pay bank debts or exempt to the wife and children.

That such active trustee taking title, disposition, and management of the properties in hand stands in the same position as if made direct to the beneficiary has not been questioned anywhere. To hold such trustee to a like accounting is not to extend the

rule, while not to hold him would be to make exception in favor of trustees of this class and throw wide open the door to fraudulent conveyances.

Mere inaction while the bank was trying to work out its own plans which would render such suits unnecessary cannot be held laches.

Again it is urged these complainants, pre-existing creditors, are estopped because following, and, as a result of the judicial proceedings authorizing such loan, the funds borrowed went into the bank account of the executor, and were used in payment of debts, some of which went to these complainants, and others of their class, part payments on their demands.

There is a well-recognized doctrine in equity that a party cannot take both under and against judicial proceedings. The doctrine is well illustrated in the case of judicial sales. So long as a party, whether sui juris or not, takes and holds the proceeds of such sales, he cannot question their validity. The basic principle is fully presented in Oden et al. v. Dupuy et al., 99 Ala. 36, 11 So. 419, 12 So. 605, and cases therein cited and reviewed. We are of opinion this rule has no application here.

The borrowed fund was commingled with other assets of the estate; payments were made, if at all, from this commingled fund, earmarked as estate funds. Creditors receiving and now retaining it have never had knowledge of the quantum of funds received. The facts are within the keeping of the bank. Unless and until the bank, by proper proceedings, ascertains and advises what part of this diverted fund, if any, was received by these creditors, no complaint can be made on this line. But, perhaps, more controlling is the fact that this fund came into the estate as a loan obtained by the executor, secured by note and mortgage; promises to repay the loan from the estate, under the sanction of the court order. It did not represent increased assets, was not intended to augment the ultimate dividends of these creditors from an insolvent estate. The entire scheme, worked out as per court order, would replace this fund in the insurance trust. Surely it would be there subject to the same equities as when diverted therefrom. The net result as to these creditors was to take their fund and spread it out among the general creditors and charges of administration, with a promise to return the fund to its original status, which was not kept.

Nor can the fact that this loan transaction appeared on both sides the account on partial settlement, in the report of insolvency, or on final settlement after insolvency, change the picture.

The settlements were to ascertain the status as between the executor and the estate, in which his doings should fully appear. These items in no way affected the quantum of the estate shown by the accounting. No issue was involved touching the equitable ownership of the fund here in question nor the liability of the bank as constructive trustee thereof.

True it is, without reference to the judicial proceedings, if any ascertainable amount of this fund of $61,032.32 found its way to any of the creditors entitled to share in such fund, and is still retained, the share of such creditor in above fund, when ascertained, should be tolled to the amount theretofore received. This, in the absence of any countervailing equity in such creditor. The burden is on the executor to show the amount of such credit. All this may be worked out on the reference. We see no occasion to modify the decree of reference. Its general terms cover all inquiries as to who should share in this fund, to what amount, and for what amount, if anything, each creditor should have decree against the bank.

We find no error in the decree fixing liability on the bank for the sum specified.

### Cross-Appeal of the Penn Mutual Life Insurance Company.

The plea of the statute of nonclaim was interposed to the claim of complainant, the Penn Mutual Life Insurance Company. This plea was sustained by decree of the trial court, resulting in a denial to this creditor of any participation in the fund in question.

Under the statute then in force, a claim could be presented by verified statement filed in the probate court or could be presented to the executor or administrator in person. If in person, presentation could be in writing, verified or unverified, or could be by parol. Rosser v. Sanders et al., 219 Ala. 327, 122 So. 340.

All that was necessary was to bring home to the executor knowledge of the existence of the debt, its nature and amount, with notice, express or implied, that the

estate is looked to for payment. Jones & Co. v. Peebles, 130 Ala. 269, 30 So. 564; Smith v. Fellows, Adm'r, 58 Ala. 467; Flinn, Administrator, v. Shackleford, Creditor, 42 Ala. 202; Harrison's Adm'r v. Jones' Adm'r, 33 Ala. 258; Posey and Coffee, Ex'rs, v. Decatur Bank, 12 Ala. 802.

The evidence is without dispute that this indebtedness of decedent to Penn Mutual Life Insurance Company was for a loan secured by mortgage on real estate; was payable, principal and interest, in frequent installments, several of which accrued and were paid by the executor during the 12-month period after grant of letters testamentary, and others were paid thereafter, running as late as two years after grant of letters. Marx & Co., representatives of this creditor, sent by mail, duly received, regular statements of the several installments as they came due, and both by letter and personal interview urged prompt payment, which could only mean from the estate. Without question, the executor was advised that foreclosure proceedings would be had, if these installments were not met. Stress was laid in evidence, and in argument here, on the fact that at no time within the 12-month period did the creditor send the executor a full statement of the entire indebtedness, its nature and amount. This, without dispute, was already known to the executor from its own records, having succeeded to the position of trustee in the real estate trust theretofore handled by the same bank. The ceremony of sending a full statement of unmatured installments, known to both parties to be already within the knowledge of the executor, was unnecessary. Mere knowledge of the existence of a debt is not presentation. But, where there is knowledge of the debt, its character and amount, a demand showing the creditor looks to the executor for payment is a presentation.

Without prolonging the discussion, the evidence clearly discloses that the executor was fully informed by written and oral communications that the creditor was looking to all the means available for the collection of its debt; its entire debt as same matured. This would include the estate in the hands of the executor, subject because of the personal obligation of the debtor, and the mortgage security behind such promise.

That the chief motive of the executor in keeping installments paid up may have been to prevent foreclosure and conserve equities for the devisees in the will is unimportant. We are concerned here with the presentation of the demand by the creditor, whether notice was brought home to the executor that the creditor looked to the estate for payment of the debt, the nature and amount whereof were fully known and understood, as within the import of such notice. This, we are convinced, is clearly shown. The court, in the writer's opinion, erred in holding this claim barred by the statute of nonclaim.

The jury's verdict was merely advisory, on a charge from the court not fully stating the applicable law. The facts were really not in dispute. Making partial payments on the demand is evidence of presentation. Pharis et al. v. Leachman, Adm'r et al., 20 Ala. 662. More so now, since the statute forbids such payments. Code, § 5815. The payments made on demand after the 12-month period were unlawfully paid, unless the claim was presented within 12 months.

### Cross-appeal of Steiner Bros.

Steiner Bros. prosecute a cross-appeal for the express purpose of testing whether the proceedings of the trial court touching their claim protects their right to file claim and share as a creditor in this fund.

The facts pertinent to this inquiry are sufficiently disclosed in paragraph 5 of the opinion of the trial court and paragraph 5 of the decree following such opinion, which appear in the report of the case.

In our opinion the decree of the court fully protects the interests of cross-appellants in permitting them to come in as other creditors pursuant to paragraph 6, subsection "a" of the decree, which also appears in the report of the case.

In a creditor's suit of this character, it was entirely proper to have notice given to all those, other than the original complainants, who desired to assert a claim against this trust fund, to come in and prove their claims within a time specified. Maxwell v. Peters Shoe Co., 109 Ala. 371, 19 So. 412; Taber et al. v. Royal Insurance Co. et al., 124 Ala. 681, 26 So. 252; Cowan, Trustee, v. Staggs, et al., 178 Ala. 144, 59 So. 153; Garry & Welpin et al. v. Jenkins, Moore & Co. et al., 109 Ala. 471, 20 So. 8; Talladega Mercantile Co. v. Jenifer Iron Co., 102 Ala. 259, 14 So. 743; Merchants' Bank of Mobile v. Parrish et ux., 214 Ala. 96, 106 So. 504; Johnson v. Waters, 111 U.S. 640, 4 S.

Ct. 619, 28 L.Ed. 547; Jones' Ex'rs v. Fayerweather, 46 N.J.Eq. 237, 19 A. 22.

The foregoing expresses the views of the writer, in which Justice BROWN concurs, except as to the cross-appeal of the Penn Mutual Life Insurance Company.

The court, by per curiam opinion, concludes otherwise on the points therein decided.

Concurrences are shown by that opinion, which here follows:

PER CURIAM.

We concur in the opinion of Justice BOULDIN except in so far as it conflicts with what we here express.

Dr. Gewin, when in life, made an insurance trust embracing a large amount of life insurance. All of it was subject to one instrument defining the duties and powers of the trustee. The duty was to pay all bank loans which he may owe at the time of his death and to hold the balance in trust for the use and benefit of his wife and children, share and share alike.

While there was no consideration in so far as the wife and children were concerned, there was consideration for the duty to pay bank debts of, to wit, $167,250.89. After paying those debts, there was left to the insurance fund in the hands of the trustee approximately $80,000; of this amount approximately $18,000 was exempt from the payment of debts when, as here, it was payable to the wife and children. There was then left of the fund about $62,000, which, under the terms of the trust deed, was also for the benefit of the wife and children, but which could in this suit be subjected to the claims of creditors existing at the time of the execution of the trust. So that, of the total sum of $249,148.25 in the insurance trust, only about $62,000 may be subjected to the demand of complainants.

The trust agreement as a whole was not on that account subject to be vacated, although it may be conceded that a proportion of the total sum should be held by the trustee to be for the benefit of complainants and other creditors of decedent.

It is of course true that a fraudulent grantee holds the property as a constructive trustee for the creditors.

We have adopted in this state a rigid rule as to declaring invalid voluntary conveyances against existing creditors, regardless of good faith in the transaction (contrary to the great weight of authority, 27 Corpus Juris, 548), and have held (likewise, it seems, contrary to the weight of authority, 27 Corpus Juris 498) that the fact the creditor is secured creates no bar to his suit to set aside such conveyance. Jones v. Peebles, 130 Ala. 269, 30 So. 564. Our decisions are based upon the theory that the grantee, without consideration, receives the benefit of the property of the debtor, which should be devoted to the payment of the grantor's debts—that one should be just before he is generous. Lockard v. Nash, 64 Ala. 385.

Admittedly the application of the rigid rule may work a hardship in some instances and appear somewhat unjust. Nevertheless the principle is now too firmly established in this jurisdiction to be now questioned, and we steadfastly adhere thereto.

The trustee of an express trust with duties to perform was in the discharge of these duties and in good faith made a loan of funds in its hands after having first secured an authorization thereof by decree of the court.

The authorities relied upon by complainants, and cited in the opinion of Justice BOULDIN, are those in which the grantees in the conveyances are held to so account. Upon what theory of equity and justice is this rigid rule to be extended to the trustee in this case who acted in good faith, and who was not a beneficiary of the trust? There is an old quotation found among the legal maxims, "What is just and right is the law of laws."

While out of regard for conformity to fixed rules and principles it may perhaps be doubted that this can be said to have universal application, yet it at least points the way to an ethical goal. Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363.

The fixed and rigid rule against the grantee is in no manner disturbed by the refusal of its extension to the trustee, as here shown, acting in good faith. That such extension would work injustice in this case and render the trustee in effect a guarantor against the adversities of the economic world would seem clear. Our cases have gone to no such length, and we can see no just reason for such extension of the rule.

If in this transaction the trust agreement had included only the fund which was subject to the claims of creditors, it may be conceded for the sake of this argument that the trustee, named in the trust agreement, and also by construction of law, because of the fraudulent conveyance, would have no right to invest the funds, at least without authority of an equity court, without being personally due to account for the amount, in the event the investment should not be satisfactory to the creditors. In that event, the whole instrument would be subject to be vacated, for the whole of it would be voidable at the election of the creditors.

■ Section 8038, Code, declares that such conveyances are void. But this court has held that the conveyance is valid as to all the world except the creditors of the grantor. And that, while as to them the conveyance is void, "the thing which he [creditor] must, in all cases, no matter to what forum he addresses himself, do is to manifest an election on his part to treat the property as the property of the debtor." McCurdy v. Kenan, 185 Ala. 183, 64 So. 578, 579. As to creditors, the conveyance is voidable and not void. McCurdy v. Kenon, 178 Ala. 345, 59 So. 489; Robins v. Wooten, 128 Ala. 373, 30 So. 681. They may elect to confirm it. Robins v. Wooten, supra, 128 Ala. 373, page 379, 30 So. 681. And, if the right is not seasonably asserted it is barred. The limitations applicable depend upon the circumstances of each case, as to whether it is for real estate, as in Van Ingin v. Duffin, 158 Ala. 318, 48 So. 507; Washington v. Norwood, 128 Ala. 383, 30 So. 405, or in other instances referred to in Quick v. McDonald, 214 Ala. 587, 108 So. 529.

■ Until and unless the creditors exercise the election within the time required, the trustee is holding the property in trust. What will he do with it? He does not know, and has no duty to inquire what the creditors will do in an exercise of their election. They have no specific lien on the property, but only a right to pursue some course by which an election is manifested. Subject to that right, the conveyance in trust is valid as to all the world.

In this instance the rights of creditors attach to a relatively small proportion of the whole. It is undivided, and the trustee is charged with duties respecting the whole and all of it. He must therefore perform them. We do not think the trustee is doing any wrong when he proceeds with the enforcement of the trust in good faith as a whole until he is notified that the creditors have elected to claim that some of the trust funds are subject to their debt.

Dr. Gewin died in July, 1929. The insurance was all collected soon afterwards. The bank then proceeded to perform the trust. Property was high in value, and the bank probably indulged the reasonable presumption that the estate was largely more than solvent. The debts were secured by real estate mortgages supposed to be ample in value. But the financial crash came, and property began to depreciate. By February, 1930, the bank had paid sums as directed in the trust agreement, leaving approximately $70,000. By authority of the circuit court, in equity, this was loaned to the estate of decedent with a mortgage on property appraised to be of much more value than the amount of the loan. At that time none of the complainants had made claim. One creditor did make claim and was satisfied. The loan was made. But the security depreciated in value as did that on which complainants and others held mortgages.

When it became apparent the property would not pay the debts and the security for the loan dwindled to about $22,000, the creditors then for the first time took steps not to hold the bank for the $22,000, but for a personal liability for the $62,000, which has been mentioned without accounting for any loss on account of such depreciation in value of the security.

■ It may be true that, when the bank made the $70,000 loan, as authorized by the court, it knew of the debts, but knew that they were all secured by mortgage on property worth much more than the debts. The circumstances were that the bank was a trustee of a substantial sum under the terms of an express trust. True, the bank knew at the election of creditors, then otherwise amply secured, they could subject a large part of that sum to their debts. In the meantime the bank must discharge the duties of the trust, including that part not so subject, and also be held to responsibility for profit which could be made on it all in event the creditors did not elect to subject that fund. The bank was trustee in a dual capacity, (one) impos-

338

ing a duty to earn an income at least on a part, and on all, unless what then appeared a remote contingency should occur, and (the other) to stand as a constructive trustee, at the election of creditors. If the creditors finally decided to subject the fund, what claim would they make on the bank for interest? 12 R.C.L. § 149, p. 642. The trustee was under no duty to the creditors to tender this money to them. Apparently ample provision had been made for them, and decedent wished to protect his family from want. Must the trustee in the express trust, with duties to perform, hold this sum inactive until the creditors may elect to seize it, when, if they elect not to seize it, it may be he would be liable as for a breach of duty?

The treatment of the situation has been made by Justice BOULDIN as though decedent had made a voluntary trust of an amount, no more, which was subject to debts likely to be such as that demand will be made for it to satisfy them, with no other duty but to hold the fund until those creditors are barred by limitations from subjecting the fund to their debt.

But that is not the situation. Since he is here chargeable in a dual capacity, in one of which he may have duties subordinate to those of another upon an uncertain and remote contingency, his conduct in making the investment should be measured by the ordinary duties of a trustee. It seems to us that the trustee acted with due care in the observance of its duty in that respect, and should not now be held responsible for a financial depression which caused the property in trust to depreciate in value.

The bank had the right to accept the trust which included this fund as an inchoate element. It was not acting in bad faith in any respect. Equity will not require of such a trustee that he be superhuman in foreseeing future events. He must act as a prudent person in the discharge of all his duties. There can be no conflict of legal duty. Was it his duty to lend the money? Did he exercise due care and prudence when he did so? Did he violate any law?

When the whole situation is fully so considered, we do not think he did a wrong in lending this money by authority of his court of general jurisdiction.

We think that the circumstances show that the bank was innocent of any fraud. No one had any fraudulent purpose in creating and executing the trust. The rule is that, when so, though the grantee may be chargeable for the value of the property conveyed in violation of the rights of existing creditors, "he may relieve himself from liability to the creditors of his grantor by paying to bona fide creditors a sum of money equal to the value of such property." Miller v. Buell, 226 Ala. 212, 146 So. 613, 614; Cottingham v. Greely-Burnham Grocery Co., 129 Ala. 208, 30 So. 560, 87 Am.St.Rep. 58; 12 R.C.L. 641, § 148; 27 Corpus Juris, 674.

When the bank loaned this money to the estate, it was all used, or due to be used, in paying debts of the estate, it then was where complainants had the right to have it go; that is, "to treat the property as the property of the debtor." McCurdy v. Kenan, supra. They must thereafter look to the executor for its proper disbursement. If it was subject to debts, the trustee was due to pay it to the executor for that purpose. Complainants had no lien until their suit was filed by which a lien was created. Barnes v. Bell (Ala. Sup.) 163 So. 616[1]; McCarty v. Robinson, 222 Ala. 287, 131 So. 895; North Birmingham American Bank v. Realty Mortgage Co., 223 Ala. 30, 134 So. 796.

It does not answer this to say that, when the money was paid to the executor, a debt was made by the estate to the trustee, because the value of that debt may be subject in this suit to complainants' claims. It is immaterial whether the executor used that money in paying those complainants or other bona fide debts.

It is true that the executor does not represent the creditors, but his testator, and has no more right to recover property fraudulently conveyed than the testator. Davis v. Swanson, 54 Ala. 277, 25 Am.Rep. 678; Davis v. W. S. Stovall & Bro., 185 Ala. 173, 64 So. 586. But, when he has in his possession as such executor the assets of the estate which are subject to debts, those assets are where the creditors have the right to cause them to be, and cannot complain because they are so placed before they have elected to subject them to their debt, and thereby fixed a lien for their own account.

[1] 231 Ala. 84.

A fraudulent grantee is held to be a trustee in invitum, but, after the death of the fraudulent grantor, he is deemed an executor de son tort, enabling him to make any defense which could be made by the rightful executor, including the statute of nonclaim, Halfman's Ex'x v. Ellison, 51 Ala. 543; Simonton v. McLane's Adm'r, 25 Ala. 353, except where there has been no administration, Merchants' Nat. Bank v. McGee, 108 Ala. 304, 19 So. 356. An executor de son tort may purge his wrong by taking out letters of administration or by delivering over the goods to the rightful administrator before action is commenced, and thereby be discharged from liability. Ward v. Bevill, 10 Ala. 197, 44 Am.Dec. 478. And, when one is executor de son tort and also the executor of right, his acts and conduct will be measured by his duty as rightful executor. Nance v. Gray, 143 Ala. 234, 38 So. 916, 5 Ann.Cas. 55.

This same bank was therefore chargeable, first, as executor de son tort, and then as rightful executor, and as trustee under an express trust. If the fund was distributed by him in a way and manner as it should have been had no such voluntary donation been made, none of the creditors can make complaint, having secured no right in priority over others before such distribution. When defendant as rightful executor handled and disposed of the fund as such, in a lawful manner, others cannot complain because defendant may have also been accountable at one time as executor de son tort.

Nor can we agree with the opinion wherein the court's ruling on the matter of presentation of the claim of the Penn Mutual Insurance Company is overturned. The chancellor submitted to a jury the issue of fact as to such presentation, with the result of a verdict for defendant. In the exercise of his discretion, the chancellor accepted their finding, and adopted it as his own. Any ruling here to the contrary must evidently rest upon the theory, as argued by this cross-appellant, that due presentation was made to appear as a matter of law. To this we cannot agree. The claim of the Penn Mutual Life Insurance Company rested upon a mortgage on real estate presumably ample security for the debt. There were installment payments of principal and interest due annually. The demands made by this company for payment related to those installments and threatened foreclosure, if not so paid. The executor had reason to believe there were valuable equities in the property, well worth preserving for the estate, and we consider the reasonable inference that all correspondence and conversation were referable to these installments, and that at no time did said company make it known to the executor that it was looking to the estate for the principal not yet due.

It is not claimed there was any direct presentation; that is, any definite demand therefor. Cross-appellant's claim must therefore rest upon implication. The fact that the executor knew the amount of the debt does not prevent the bar of the statute. Brannan v. Sherry, 195 Ala. 272, 71 So. 106, 108. The governing rule is stated in this last-cited case as follows: "The actual formal presentation of the claim must be made by one having the right to make the presentation. In Jones v. Peebles, supra, the court said: .' "It is indispensable not only that the claim should be brought to the attention and knowledge of the executor or administrator, but this must be done by one having an interest in it, and a legal right to enforce its payment, and it must be evidenced by some act or word which indicates an intention to look to the estate of the deceased debtor for its payment." Allen v. Elliott, 67 Ala. 432, and cases cited. Or, to restate the principle in the language employed by Stone, J., in Smith v. Fellows, 58 Ala. [467], 472: "The result of our rulings on this question is, that to constitute a sufficient presentation, the nature and amount of the claim must be brought to the attention of the personal representative, by some one authorized in law or fact to make the presentation, and the representative must be notified, expressly or impliedly, that the estate is looked to for payment." ' "

There must be some formality of presentation, that is, something definite upon which the executor is supposed to act. Metcalf v. Payne, 214 Ala. 81, 106 So. 496.

We think the opinion lays too great a stress upon the knowledge of the executor rather than upon the question as to whether or not presentation was made as required. It may well be inferred from all the proof that cross-appellant was insisting only on installment payments as they became due, and foreclosure if not paid, and without any intention of present-

ing for payment out of the estate the principal sum, not yet due.

Reversed on direct appeal; affirmed on cross-appeal of the Penn Mutual Life Insurance Company, and on cross-appeal of Steiner Bros. Let the costs of appeal be taxed against the appellee on direct appeal.

ANDERSON, C. J., and GARDNER, THOMAS, FOSTER, and KNIGHT, JJ., concur.

BOULDIN, J., dissents on direct appeal and cross-appeal of the Penn Mutual Life Insurance Company and concurs on cross-appeal of Steiner Bros.

BROWN, J., dissents on direct appeal and concurs on both cross-appeals.

